**AUTO-OWNERS INSURANCE COMPANY, petitioner, Appellant,**

v.

**Robert A. TODD and K.T., a natural person, Respondents.**

No. C5–95–497.

Supreme Court of Minnesota.

May 16, 1996.

Mark A. Pilney, Mark R. Gaertner, Reding & Associates, St. Paul, for Appellant.

Daniel Heuel, Muir, Heuel, Carlson & Spelhaug, P.A., Rochester, for Respondent K.T.

Thomas R. Patterson, Lund & Patterson, Rochester, for Respondent Todd.

Kay Nord Hunt, Sherri D. Ulland, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for amicus curiae Insurance Federation of Minnesota.

## OPINION

ANDERSON, Justice.

Appellant, Auto–Owners Insurance Company, asserts that it does not owe a duty to defend and indemnify its insured, respondent

Robert A. Todd, for the claim of false imprisonment arising out of Todd's sexual assault of his daughter, K.T. In a declaratory judgment action commenced by Auto–Owners, the district court concluded that Auto–Owners had a duty to defend and indemnify Todd. The Minnesota Court of Appeals affirmed and held that while Auto–Owners did not have a duty to defend and indemnify Todd for bodily injuries intended by him, it did have a duty to defend and indemnify Todd for the claim of false imprisonment. We reverse.

The facts are generally undisputed. On December 1, 1991, Auto–Owners issued a one-year homeowner's insurance policy to Robert A. Todd and his wife, Pamela Todd. The policy provided personal liability protection for:

> all sums which an insured person becomes legally obligated to pay as damages because of bodily injury, personal injury (libel, slander or defamation of character; false arrest, detention or imprisonment or malicious prosecution; invasion of privacy, wrongful eviction or wrongful entry) or property damage covered by this policy.

The policy excluded coverage for "bodily injury or property damage expected or intended by an insured person."

The sexual assault giving rise to this appeal occurred at Todd's home on November 12, 1992. After repeated requests from her father for her to spend the night at his home, K.T. agreed to do so. K.T., who was 17 years old at the time, arrived at Todd's home around 10:30 p.m., after K.T.'s stepmother had gone to work and K.T.'s two sisters, ages five and two, had gone to bed.

After K.T. arrived, she and Todd watched a movie. K.T. said she lay down on the couch because she was tired. Todd sat down next to her, put his arm around her, and offered to give her a massage. He told her that to do a massage properly she should have her clothes off, so Todd took her shirt off and then K.T. fell asleep. When she woke up, K.T. discovered that Todd had taken her sweatpants off and was lying on top of her and rubbing against her. K.T. stated

that she "got scared" and began to cry. She turned around and asked Todd what he was doing and if he was trying to rape her. Todd said that he would never do anything like that, and let K.T. put her clothes back on. K.T. and Todd then continued to watch the movie until K.T. went upstairs to bed.

Todd followed K.T. upstairs and got into bed with her. He hugged her and told her that a long time ago in Japan, fathers would make sure that their daughters did not remain virgins until they were married. Todd then put his hands into K.T's sweatpants and attempted to sexually arouse her by rubbing between her legs. He then took K.T.'s sweatpants and shirt off and ejaculated, after which he left the bed and went to the bathroom to wash himself. When he returned to the bed, he found K.T. lying on her side with her face to the wall. K.T. described herself as being "scared" and told Todd that "I can't have sex with my dad." Todd began rubbing his penis on her vagina, eventually penetrating her. After a few minutes passed, K.T. moved to the end of the bed. K.T. stated that Todd then grabbed her again and made her "lay" with him another time, forcing her to remain in bed with him. K.T. stated that by the way Todd was holding her and speaking to her, she felt "trapped" and believed that he was prepared to use force if she did not submit to him. She stated that she wanted to escape, but could not. Todd kept K.T. with him during the evening, and when she woke up the next morning, Todd was still in bed next to her.

Approximately one week later, K.T. was contacted in school by a guidance counselor after she was found crying in a bathroom. She told the guidance counselor that something had happened with her father, but did not reveal any details of the sexual assault. Over the next few weeks, K.T. reported the sexual assault to her boyfriend and to her mother. On December 15, 1992, K.T. provided a recorded statement to the Winona Police Department detailing Todd's extensive history of sexual abuse, including the sexual assault which occurred on the night of November 12, 1992.[1] K.T. subsequently com-

---

1. Following a criminal investigation, Todd pleaded guilty to criminal sexual conduct in the third

menced a civil action in Winona County District Court against Todd and her stepmother, Pamela Todd. Counts one, two and four of K.T.'s complaint alleged injuries resulting from Todd's sexual abuse, battery and intentional infliction of emotional distress. K.T. later conceded that the homeowner's policy did not cover these claims. Count three of K.T.'s complaint, raising a claim of false imprisonment, forms the basis of this appeal. It alleges that Todd "intentionally restricted the physical liberty of K.T. by words and acts by which he intended to restrain K.T. so that he could commit a battery upon K.T.'s person."

Todd tendered defense of K.T.'s civil action to Auto–Owners, which refused to defend and indemnify Todd on the grounds that Todd's actions were excluded from coverage under the intentional bodily harm provision of the homeowner's policy. Auto–Owners then commenced a declaratory judgment action to determine whether or not it had a duty to defend and indemnify Todd for any of the claims raised in K.T.'s complaint. Auto–Owners and Todd brought cross motions for summary judgment on Auto–Owners' duty to defend and indemnify Todd. The district court denied Auto–Owners' motion, ruling that it had a duty to defend and indemnify Todd for the claim of false imprisonment, and granted Todd's motion for summary judgment that Auto–Owners was obligated to defend and indemnify Todd. While the dispute between Auto–Owners and Todd was pending, K.T. and Todd entered into a *Miller–Shugart* agreement in which Todd stipulated to the entry of judgment against him in the amount of $1,000,000, allocating $330,000 of that amount to K.T.'s damages for false imprisonment. Auto–Owners is seeking to have this settlement agreement set aside in a separate action.

On appeal, a divided court of appeals affirmed. The majority held that while Auto–Owners did not have a duty to defend and indemnify Todd for bodily injuries intended by him, it did have a duty to defend and indemnify for the claim of false imprisonment. The majority reasoned that a duty to defend arose because K.T.'s claim of false

imprisonment was based on the acts of Todd which were distinct and isolated in time from Todd's sexual assault. The majority suggested that Todd sexually assaulted K.T. three times and after the third and final assault, he forced K.T. to stay in bed with him against her will; that K.T. was frightened and believed she could not leave; and that Todd kept her with him the rest of the evening. The dissent concluded that absent the sexual abuse, there could not be a finding of false imprisonment in this circumstance, and that the false imprisonment claim is inextricably linked with the sexual abuse and the intentional act exclusion bars coverage. The dissent also concluded that Auto–Owners had no expectation of liability for this kind of circumstance.

On an appeal from summary judgment, this court asks two questions: (1) whether there are any genuine issues of material fact, and (2) whether the lower courts erred in their application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). The interpretation of an insurance policy, including the question of whether a legal duty to defend or indemnify arises, is one of law which this court reviews de novo. *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885 (Minn.1978).

An insurer's duty to defend its insured arises when any part of the claim against the insured is arguably within the scope afforded by the policy. *Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822, 825–26 (Minn.1980). The duty to defend is broader in scope than the duty to indemnify. *Id.* at 825. An insurer seeking to escape its duty to defend has the burden of establishing that all parts of the cause of action fall clearly outside the scope of coverage. *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165–66 (Minn.1986).

Auto-Owners contends that it should not be required to defend or indemnify Todd because Todd's acts constitute intentional sexual assault—acts excluded from coverage under the intentional bodily harm provision of the homeowner's policy. Todd and K.T.

degree in Winona County District Court.

concede that the homeowner's policy excludes coverage for acts of intentional sexual conduct, but counter that the "straight-forward language" of the homeowner's policy expressly provides coverage for K.T.'s damages caused by false imprisonment. Todd and K.T. reason that, although the express language of the homeowner's policy excludes coverage for "bodily injury" and "property damage" expected or intended by an insured person, this language does not exclude coverage for injuries arising from "personal injuries" such as false imprisonment. Auto–Owners counters by arguing that the false imprisonment claim is inextricably linked with and part of the overall intentional plan of Todd to sexually assault K.T. and that the claim is excluded from coverage.

The parties do not dispute that Todd's sexual assault was intentional and that the homeowner's policy contains an intentional acts exclusion. This court has inferred an insured's intent to harm in cases of nonconsensual sexual conduct as a matter of law so as to preclude insurance coverage. *R.W. v. T.F.*, 528 N.W.2d 869, 872–73 (Minn.1995); *see also Horace Mann Ins. Co. v. Indep. School Dist. No. 656*, 355 N.W.2d 413, 416 (Minn.1984) (inferring intent as a matter of law where a female student in tenth grade was sexually assaulted by a basketball coach); *Estate of Lehmann v. Metzger*, 355 N.W.2d 425, 426 (Minn.1984) (sexual assault on underage victim *ipso facto* intentional conduct because one cannot negligently sexually assault another).

For primary support of its argument that K.T.'s false imprisonment claim is inextricably linked with Todd's intentional sexual assault, Auto–Owners cites *Allstate Ins. Co. v. S.F.*, 518 N.W.2d 37 (Minn.1994). In *Allstate*, the victim alleged that she was sexually assaulted by three men. *Id.* at 39. After the first assault, the insured left the victim's apartment. The other two men remained in the apartment and forced her to engage in sex another time. The victim's complaint alleged that the three men, by entering her home, placed her in the zone of danger of physical impact and, as a result, she suffered the negligent infliction of emotional distress. *Id.* at 40. The court held that this allegation was barred by the sexual act exclusion in the policy. *Id.*

The victim in *Allstate* also argued that the insured negligently abandoned her when he left the apartment, notwithstanding her request that he stay, when he knew or should have known that the other two men would sexually assault her. *Id.* at 40–41. The court, in language relevant to this case, noted that:

> [t]he difficulty with this theory, aside from the fact it has never been pleaded, is that it attempts to isolate one aspect of the insured's conduct from his whole conduct that evening and then label it negligence. In fact, however, if [victim's] version of events is true, the sexual assaults that evening were part of an overall intentional plan on the part of the three men to use plaintiff for their sexual pleasure. This is reprehensible conduct, but it is intentional reprehensible conduct for which all three defendants are liable to [the victim] for intentional assault and battery.

*Id.* at 41.

The court of appeals distinguished the present case from *Allstate* primarily on the grounds that the false imprisonment claim "can be isolated from the sexual assaults because these events occurred at different times." *Auto–Owners Ins. Co. v. Todd*, No. C5-95-497, 1995 WL 507635 at *3 (Minn. App., Aug. 29, 1995). But the court of appeals misreads *Allstate*, for that case specifically rejected the attempt to "isolate" events for coverage purposes. *Allstate*, 518 N.W.2d at 41. Rather, *Allstate* establishes that courts should look to the "overall intentional plan" of the insured. *Id.*

Our holding in *Allstate* compels reversal of the present case. Todd's overall intentional plan was to sexually assault his daughter, not to falsely imprison her. Absent the sexual assault, there would be no claim of false imprisonment. Here, K.T.'s claim of false imprisonment is inextricably linked to the sexual assault. Even K.T.'s complaint implies this, stating that Todd "intentionally restricted the physical liberty of K.T. by words and acts by which he intended to restrain K.T. so that he could commit a battery upon K.T.'s person."

Consistent with this court's reasoning in *Allstate*, we hold that the false imprisonment is inextricably linked with and part of the overall intentional plan of Todd to sexually assault his daughter. The false imprisonment claim is thus excluded from coverage under the intentional bodily harm provision of the homeowner's policy.

Reversed.