Rockingham
No. 2007-079

## STATE FARM INSURANCE COMPANY

v.

## WILLIAM BRUNS AND DIANE BRUNS

Argued: January 16, 2008
Opinion Issued: February 13, 2008

*Mallory & Friedman, PLLC*, of Concord (*Blake M. Sutton* on the brief and orally), for State Farm Insurance Company.

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* and *Mary Ann Dempsey* on the brief, and *Ms. Connor* orally), for Diane Bruns.

*LaFlamme, Barron & Chabot*, of Haverhill, Massachusetts (*Gerard R. LaFlamme, Jr.*), for William Bruns, filed no brief.

GALWAY, J. The appellant, Diane Bruns, appeals orders of the Superior Court (*Fitzgerald* and *McHugh*, JJ.) granting summary judgment in favor of the appellee, State Farm Insurance Company (State Farm). We affirm.

The parties do not dispute the relevant background facts. In 2005, Mrs. Bruns brought suit individually, and as the mother and next friend of K.G., a minor, against William Bruns, alleging, in part, that between August 2003 and February 2005, Mr. Bruns sexually assaulted K.G. At all relevant times, Mr. Bruns was covered by a personal liability umbrella policy issued by State Farm. State Farm assigned counsel to defend Mr. Bruns, subject to a reservation of rights. In April 2006, State Farm filed a petition for declaratory judgment, requesting a ruling that it was not obligated to defend or indemnify Mr. Bruns.

Following cross-motions for summary judgment, the superior court ruled in favor of State Farm, finding that it had no obligation to defend Mr. Bruns. Mrs. Bruns appealed that ruling to this court. In addition, Mrs. Bruns filed a motion in the superior court to amend her declaration. The parties stayed the appeal in this court in order to determine whether Mr. Bruns was entitled to coverage for the claims in her amended declaration. The parties again filed cross-motions for summary judgment, and again summary judgment was granted in favor of State Farm. Mrs. Bruns appealed this second ruling, which we consolidated with the first appeal.

In Mrs. Bruns' initial declaration, she brought counts for sexual assault and battery, intentional infliction of emotional distress, invasion of privacy and false imprisonment, as well as claims for various enhanced damages in the event Mr. Bruns was found liable on any of the substantive torts. The superior court found that the claim for sexual assault and battery was excluded from coverage because the policy specifically excluded any bodily injury that is expected or intended by the insured, or which is the result of the insured's wanton or malicious act. The superior court also concluded that because "all other counts flow from the assault and battery," Mrs. Bruns' other counts were likewise excluded.

When Mrs. Bruns amended her declaration, she claimed that there were incidents of false imprisonment and invasion of privacy where "no actual sexual contact took place." The superior court determined that because

Mrs. Bruns' claims were still based upon the sexual abuse, they were not entitled to coverage.

On appeal, Mrs. Bruns contends that: (1) her counts for false imprisonment and invasion of privacy are covered by the policy; (2) the policy is conflicting or ambiguous and must be construed to provide coverage; and (3) the policy also covers her claims for enhanced compensatory damages and loss of parental consortium.

When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Webster v. Acadia Ins. Co.*, 156 N.H. 317, 319 (2007). If no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

 It is well-settled in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy. *Id.* In considering whether a duty to defend exists based upon the sufficiency of the pleadings, we consider the reasonable expectations of the insured as to its rights under the policy. *Id.* An insurer's obligation is not merely to defend in cases of perfect declarations, but also in cases where, by any reasonable intendment of the pleadings, liability of the insured can be inferred, and neither ambiguity nor inconsistency in the underlying complaint can justify escape of the insurer from its obligation to defend. *Id.* In cases of doubt as to whether the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. *Id.*

Because an insurer's obligation to defend is determined by whether there are sufficient facts in the pleadings to bring the claims within the express terms of the policy, we begin our analysis with an examination of the insurance policy language. *Marikar v. Peerless Ins. Co.*, 151 N.H. 395, 397 (2004). Under the terms of the policy, when a claim or suit against an insured is covered by the policy, State Farm is responsible to defend the insured. Additionally, State Farm is liable to indemnify the insured for any damages the insured becomes obligated to pay. For a claim to be covered by the policy, it must be a "loss" which occurs within the policy period. A "loss" is defined as:

> a. an accident, including injurious exposure to conditions, which results in *bodily injury* or *property damage* during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one loss; or

b. the commission of an offense, or series of similar or related offenses, which result in *personal injury* during the policy period.

In short, State Farm is liable to defend, and potentially indemnify, the insured for an accident resulting in bodily injury, or the insured's commission of an offense resulting in personal injury.

Bodily injury is defined as "physical injury, sickness, disease, emotional distress or mental injury to a person." However, the policy excludes coverage for any bodily injury which is expected or intended by the insured, or which is the result of the insured's willful and malicious act. The term "accident," though not defined in the policy, is reasonably understood to mean, and has been consistently interpreted as, "an undesigned contingency, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Id.* at 398 (quotations and ellipsis omitted). Personal injury is defined, in relevant part, as an injury caused by the commission of various offenses, including false imprisonment and invasion of rights of privacy. Coverage is excluded, however, for any personal injury caused when the insured acted with the specific intent to cause harm or injury.

Against this framework, we review the facts alleged in the pleadings. The first count in Mrs. Bruns' initial declaration seeks damages for sexual assault and battery. For the policy to provide coverage for such an event, it must either be an accident resulting in bodily injury, or the commission of an offense resulting in personal injury. As sexual assault is not one of the offenses listed in the policy which, if committed, would result in personal injury, we are concerned only with whether sexual assault and battery is an accident resulting in bodily injury. "If the insured did not intend to inflict the injury on the victim by his intentional act, and the act was not so inherently injurious that the injury was certain to follow from it, the act as a contributing cause of injury would be regarded as accidental ...." *Providence Mut. Fire Ins. Co. v. Scanlon*, 138 N.H. 301, 305 (1994) (quotations omitted). "[A]n act is inherently injurious if it is certain to result in *some* injury, although not necessarily the particular alleged injury." *Id.* at 306.

■ We have previously held that sexual assault upon a minor is inherently injurious, in that it cannot be performed without a certainty that some injury will result. *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 524 (1986). We see no reason to deviate from that holding in this case. Because the causation of injury is inherent in the commission of a sexual assault upon a minor, it cannot be regarded as accidental. *Id.* Here, Mrs.

Bruns has alleged a sexual assault and battery upon a minor, an act that may not be treated as an accident. Accordingly, the claim for sexual assault and battery does not meet the definition of a "loss" in the policy and is, therefore, not entitled to coverage.

We reach a similar conclusion with respect to the claim for intentional infliction of emotional distress. Because in such a claim, any injury must be intentionally caused for the claim to succeed, it cannot be said to be an accident. *See Scanlon*, 138 N.H. at 305-06. Further, intentional infliction of emotional distress is not an offense which, if committed, results in personal injury as defined in the policy. Accordingly, because intentional infliction of emotional distress is not a "loss," it is not a claim subject to the policy's coverage.

Counts III and IV of Mrs. Bruns' initial declaration allege invasion of rights of privacy and false imprisonment respectively. Such claims are specifically referenced in the policy as offenses, the commission of which could result in personal injury. Such claims may, therefore, meet the policy's definition of a "loss." State Farm, however, argues that these counts are little more than attempts to create coverage for the alleged sexual assaults where it would otherwise be denied. According to State Farm, while counts III and IV allege that the sexual assaults also constituted actionable invasions of privacy and false imprisonment, such claims are simply descriptions of elements of the sexual acts previously charged. We agree.

The counts for invasion of privacy and false imprisonment in Mrs. Bruns' initial declaration specifically rely upon the commission of the sexual assaults to create liability. Regarding the invasion of privacy claim, the initial declaration states:

> The acts of the defendant in entering the minor plaintiff's bedroom at the time, place and manner in which he did, and then proceeding to place his hands under her clothing ... to touch her breasts, buttocks and genitals, constituted conduct, without justification or legal/rightful cause, which unreasonably intruded on the physical and mental solitude and seclusion of the minor plaintiff, and further constituted conduct which exceeded the bounds of decency.

With respect to the false imprisonment claim, the initial declaration states:

> [A]t the times and places where these sexual assaults took place, usually while the minor plaintiff was in bed in her own bedroom, the defendant approached her and touched her in such a manner

that his conduct constituted an unlawful restraint of her freedom, both physically and emotionally.

It is also worth noting that the initial declaration states that Mr. Bruns' "course of conduct" and "pattern of sexual abuse and molestation" amounted to grooming, in that the commission of the earlier assaults made it more likely that assaults and other violations would occur in the future. *See State v. McIntyre*, 151 N.H. 465, 468 (2004) (describing "grooming" as a progression in the level of abuse).

■ The facts as they are alleged in the initial declaration indicate that any false imprisonment or invasion of privacy was the result of the sexual assaults. Put another way, as they are alleged, the claims for invasion of privacy and false imprisonment are merely rebrandings of the claim for sexual assault. We are not persuaded that the renaming of a claim entitles it to coverage where coverage would not otherwise exist. We, instead, agree with the First Circuit's analysis of New Hampshire law, that:

> In deciding the scope of a liability policy's coverage, a court must compare the policy language with the *facts* pled in the underlying suit to see if the claim falls within the express terms of the policy; the legal nomenclature the plaintiff uses to frame the suit is relatively unimportant.

*Titan Holdings Syndicate, Inc. v. City of Keene, N.H.*, 898 F.2d 265, 271 (1st Cir. 1990). Here, the claims in the initial declaration, despite their headings, are for sexual assault, and the restatement of such claims as invasions of privacy or false imprisonments does not entitle them to coverage where it is otherwise properly denied.

Mrs. Bruns argues that these claims are covered by the policy because, while they may arise out of the commission of the sexual assaults, there is no exclusion in the policy for those claims that "arise out of" uncovered acts. As we have stated, however, these are not claims that arise out of uncovered acts; they are restated versions of the claims for the uncovered acts. Insurance coverage may not be obtained by merely changing the name of the act from one outside the policy to one within it. Accordingly, we uphold the superior court's grant of summary judgment in favor of State Farm as to the claims in the initial declaration.

In the amended declaration Mrs. Bruns purported to allege instances of false imprisonment and invasion of privacy occurring without sexual contact. With respect to the invasion of privacy claim, all factual allegations in the initial declaration remained unchanged, except that Mrs. Bruns added:

> In addition, this invasion of privacy occurred on numerous occasions where no actual sexual contact took place. This invasion of privacy included the psychological and emotional imprisonment and brainwashing of the minor plaintiff, leaving her helpless to resist these invasions of her privacy by the defendant.

Similarly, the claim for false imprisonment added:

> In addition, there were numerous occasions where defendant falsely imprisoned the minor plaintiff in her bed, room and home, where no actual sexual contact took place. Under these circumstances, the minor plaintiff, due to defendant's "grooming," prior conduct, psychological entrapment and brainwashing and threats, was both physically and emotionally imprisoned by the defendant as she was afraid and unable to escape and leave his presence.

Both claims in the amended declaration, as in the initial declaration, specifically incorporate by reference all prior allegations, including that Mr. Bruns had engaged in a course of conduct and pattern of molestation that amounted to grooming.

State Farm contends that because these new allegations are intertwined with the allegations of sexual assault, and so dependent upon the facts of the sexual assaults, the claims may not be separated. Thus, State Farm argues, the claims for false imprisonment and invasion of privacy in the amended declaration are not entitled to coverage.

We are not aware of, and the parties do not point to, any decision from this jurisdiction directly on point. Relying upon decisional law from other jurisdictions, State Farm contends that because the claims for invasion of privacy and false imprisonment are "inextricably linked" with or "inseparable from" the sexual assault claims, they are precluded from coverage. In *Auto-Owners Insurance Co. v. Todd*, 547 N.W.2d 696 (Minn. 1996), a minor alleged that she had been sexually assaulted by her father and sought damages for the sexual abuse, and for intentional infliction of emotional distress. *Id.* at 697-98. The daughter also alleged that she had been falsely imprisoned because her father had restrained her "so that he could commit a battery upon [her] person." *Id.* (quotation omitted). The father's insurer refused to defend or indemnify him arguing, in part, that the false imprisonment claim was inextricably linked with and part of his overall intentional plan to sexually assault his daughter, and was, therefore, precluded from coverage. *Id.* at 699. The daughter agreed that the claims for sexual abuse and intentional infliction of emotional distress

were excluded from coverage, but contended that the false imprisonment claim was covered. *Id.* at 698-99.

The Minnesota Supreme Court noted that its established rule in determining coverage was to "look to the 'overall intentional plan' of the insured." *Id.* at 699. The court went on to state that a review of the daughter's complaint established that the father's overall intentional plan was to sexually assault his daughter, not to falsely imprison her. *Id.* Thus, the court held that because the sexual abuse was not covered and because the false imprisonment claim was inextricably linked with the intentional plan of sexual abuse, it was excluded from coverage. *Id.* at 699-700.

Mrs. Bruns, in a footnote in her brief, urges us to reject the reasoning of *Todd* for two reasons. First, she contends that its holding creates a conflict in the policy language relating to the coverage of intentional torts and, thus, the policy must be construed to provide coverage. For reasons stated later in this opinion, we do not accept this assertion. Second, she argues that the holding in *Todd* is inconsistent with New Hampshire law which states that insurers may limit their liability only through clear and unambiguous policy language. *See Cacavas v. Maine Bonding & Casualty Co.*, 128 N.H. 204, 208 (1986). *Todd*, however, is not inconsistent with this New Hampshire principle. The holding in *Todd* was directed at whether the claims alleged were all based upon inextricably linked facts that fell outside the policy's coverage, not whether the policy's language clearly excluded coverage. Thus, it was the facts alleged, and not the language of the policy, that was at issue.

In *Horace Mann Insurance Co. v. Barbara B.*, 846 P.2d 792 (Cal. 1993), the insurer argued that it owed no duty to defend and indemnify a teacher, Lee, accused of sexually molesting and otherwise harassing a student, Barbara B. *Id.* at 794. Ruling on motions for summary judgment, the lower courts agreed and found that because all of Lee's acts were sexual or intentional, he was not entitled to coverage. *Id.* at 795. The Supreme Court of California reversed, however, and rejected the insurer's argument because of its "unsupported assumption that the other alleged misconduct necessarily was part of the molestation." *Id.* at 796. According to the court, although the molestation itself was not covered, "[n]othing in the complaint or the materials submitted in conjunction with the summary judgment proceedings enabled [the insurer] to determine that those allegations were related to the molestation, or that the other alleged misconduct was outside the course of Lee's education employment activities." *Id.* at 797. The court concluded that because the evidence did not "clearly establish" that all of the alleged misconduct was part of the molestation, the insurer could not deny coverage. *Id.* at 796-97. According to the court, "[n]either precedent nor logic dictates that a molester cannot

also be liable for torts of negligence against the victim which are *apart from, and not integral to, the molestation.*" *Id.* at 797 (emphasis added).

■ While the factual circumstances of these cases differ, and thus lead to different outcomes, the underlying legal and logical principles are the same. Where the facts reveal that potentially covered acts are inextricably intertwined with and dependent upon the commission of uncovered acts, an insurer will not be required to defend. If, however, there is a genuine dispute as to the interconnectedness of the claims, or where it is clear that the covered and uncovered claims may be separated, a duty to defend may exist and summary judgment must be denied. As stated by the court in *Barbara B.*:

> If the parties to a declaratory relief action dispute whether the insured's alleged misconduct should be viewed as essentially a part of a proven sexual molestation, or instead as independent of it and so potentially within the policy coverage, and if the evidence pertaining to the alleged misconduct that the parties submit does not permit the court to eliminate either of these views, then factual issues exist precluding summary judgment in the insurer's favor. Indeed, the duty to defend is then *established,* absent additional evidence bearing on this issue.

*Id.* at 798. We are persuaded by this logic.

We are further persuaded by the similarity of the issues here to other cases involving arguably intertwined claims. In various cases relative to coverage of a professional liability policy for acts of sexual abuse committed during the rendition of professional services, courts have looked to the relationship between the services provided and the harm alleged to determine whether coverage was appropriate. In *Niedzielski v. St. Paul Fire & Marine Ins. Co.*, 134 N.H. 141 (1991), we noted that: "Typically, courts have found coverage under a professional liability policy [of a medical professional] only where the sexual contact with the patient was related to, or intertwined with, and inseparable from, the services provided." *Id.* at 145 (quotations and brackets omitted). We have also noted that this analysis is applicable in legal professional liability contracts. *Ross v. Home Ins. Co.*, 146 N.H. 468, 471 (2001). Thus, while the insured professional is entitled to coverage for professional services he or she provides, it must be determined whether the facts alleged demonstrate that any other claims against the insured are so intertwined with those services that they too must be covered. *Compare St. Paul Fire & Marine Ins. Co. v. Asbury*, 720 P.2d 540, 542 (Ariz. Ct. App. 1986) (finding that because the professional services were intertwined with the assault, the

insured was entitled to coverage), *and St. Paul Fire & Marine Ins. Co. v. Shernow*, 610 A.2d 1281, 1285 (Conn. 1992) (same), *with Hirst v. St. Paul Fire & Marine Ins. Co*, 683 P.2d 440, 444 (Idaho Ct. App. 1984) (because there was an insufficient relationship between the professional services and the harm alleged, insured not entitled to coverage), *and Sanzi v. Shetty*, 864 A.2d 614, 619-20 (R.I. 2005) (same). Here, the inverse is at issue, yet the principle is the same. The insured is not entitled to coverage for the claims of sexual abuse, and it must be determined whether the facts alleged demonstrate that the other claims against the insured are so intertwined with the sexual abuse that they fall outside the policy's coverage.

Applying the above logic to the facts alleged in this case, we conclude that the facts supporting the uncovered claims and the potentially covered claims are inextricably linked. We note that while we may inquire into the underlying facts to avoid permitting the pleading strategies, whims and vagaries of third party claimants to control the rights of the parties, *Ross*, 146 N.H. at 471, there are no underlying facts in the record before us other than those alleged in Mrs. Bruns' pleadings. As quoted above, the facts alleged in the pleadings to support a claim of invasion of privacy separate from the sexual assaults are that: "This invasion of privacy included the psychological and emotional imprisonment and brainwashing of the minor plaintiff, leaving her helpless to resist these invasions of her privacy by the defendant." Although Mrs. Bruns contends that these allegations are sufficient to demonstrate an invasion of privacy unconnected to the sexual assaults, the use of *"this* invasion of privacy" and the reference to the "psychological and emotional imprisonment and brainwashing" refer directly to the previously alleged sexual assaults and the alleged course of conduct engaged in by Mr. Bruns in order to "groom" K.G. There are no factual allegations in the pleadings indicating that any invasion of privacy was, in fact, separable from, and not dependent upon, the sexual assaults. *See Commercial Union Ins. Cos. v. Sky, Inc.*, 810 F. Supp. 249, 255 (W.D. Ark. 1992) (though not properly pled, claims of imprisonment and defamation would not lie in sexual harassment lawsuit because "each and every allegation ... arises out of the alleged acts of sexual harassment. Her allegations are not mutually exclusive; they are related and interdependent. . . . It is clear from a mere reading of the complaint that this is not a 'slander' or 'false imprisonment' lawsuit. . . . This case has been pled as a . . . sexual harassment lawsuit and that is what it is.").

The nature of this action is even more clear with regard to the false imprisonment claim. In that claim, Mrs. Bruns specifically states that the false imprisonment was due to Mr. Bruns' "grooming" and prior conduct,

where the only prior conduct alleged is the sexual abuse. That is, any false imprisonment, despite the unsupported conclusion offered in the amended declaration, is the result of the sexual abuse. Under these circumstances, we conclude that the claims of invasion of privacy and false imprisonment are inextricably linked with the claims of sexual abuse such that they are not entitled to coverage.

We find it important to state what we do not hold in this case. We do not hold that the policy at issue could never cover claims for invasion of privacy or false imprisonment; nor do we hold that there is no set of facts upon which State Farm would become liable to defend and/or indemnify Mr. Bruns. Instead, we hold only that on the facts *as they are alleged,* the claims for false imprisonment and invasion of privacy are inextricably intertwined with and dependent upon the uncovered sexual assault claims and are, therefore, outside the policy's coverage. *See Pennsylvania Millers Mut. Ins. Co. v. Doe,* 882 F. Supp. 195, 198-99 (D.N.H. 1994) (holding that despite the inclusion of negligence-based counts, because sexual assault was the only act *alleged in the writ* as a cause of bodily injury, the injuries alleged had to be viewed as repercussions of the assault). In this way we agree with the conclusion of the superior court that "the insurer has no duty to defend or pay any claim when the theory of recovery for the covered claims is wholly depend[e]nt upon the facts that preclude coverage on the other claims. That is the case here." Accordingly, we uphold the superior court's grant of summary judgment on the claims in the amended declaration.

As noted previously, Mrs. Bruns alleges that there is a conflict or ambiguity in the policy because it professes to cover certain intentional torts, but then excludes coverage for those same torts when the insured acted with the intent to cause harm. According to Mrs. Bruns, this ambiguity must be construed against State Farm so as to provide coverage. We have, however, no occasion to reach the allegedly ambiguous or conflicting provisions of the policy. Our holding that State Farm is not required to defend or indemnify Mr. Bruns is based upon the conclusion that all of the claims, as they are alleged, are intertwined with clearly uncovered claims of sexual assault, and not upon the intentional harm exclusion in the policy. We, therefore, express no opinion on that portion of the policy, or whether a potential conflict or ambiguity might be resolved against State Farm. "We will not create an ambiguity simply to resolve it against the insurer." *Niedzielski,* 134 N.H. at 147 (quotations and ellipsis omitted).

Finally, Mrs. Bruns argues that the policy not only covers the substantive claims she has made, but also the claims for enhanced damages. As we have concluded that State Farm is not obligated to defend

or indemnify Mr. Bruns, we do not address whether the policy is meant to cover the claims for enhanced damages.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.