Rockingham
No. 2010-152

## NORTHERN SECURITY INSURANCE COMPANY

v.

## MICHAEL CONNORS & a.

Argued: January 13, 2011
Opinion Issued: March 31, 2011

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* and *Gary M. Burt* on the brief, and *Mr. Burt* orally), for the petitioner.

*Kenna & Sharkey, P.A.*, of Manchester (*Kevin E. Sharkey* on the brief and orally), for respondent Michael Connors.

*Brennan, Caron, Lenehan & Iacopino*, of Manchester (*Gary S. Lenehan* and *Jaye L. Rancourt* on the brief, and *Ms. Rancourt* orally), for respondents Estate of Jack F. Reid, Sr., Jay Klos, James Reid, Laurie Zic, and Catherine Reid.

CONBOY, J. The petitioner, Northern Security Insurance Company (Northern Security), appeals an order of the Superior Court (*McHugh, J.*), denying its motion for summary judgment and granting the cross-motion for summary judgment of respondent Michael Connors. The trial court ruled that Northern Security has a duty to defend respondent Connors in a civil lawsuit pending in Rockingham County Superior Court, *Reid v. Brooks*, No. 08-C-543. We affirm.

The trial court found the following facts. The civil suit that underlies this case involves the 2005 murder of Jack F. Reid. The plaintiffs in that case, who are also respondents in the instant action, are Reid's estate and several individual family members; the defendants are John Brooks (Brooks), Robin Knight, Michael Benton, Joseph Vrooman, Jesse Brooks, and Michael Connors. The writ alleges that over a two-year period, Brooks, Knight, Benton, Vrooman, and Jesse Brooks conspired to trap, torture, and kill Reid, reportedly because Brooks believed Reid, a handy man for hire, stole personal property from him. On June 27, 2005, Reid was lured to Michael Connors' residence in Deerfield for a non-existent job. Once Reid arrived, Brooks, Knight, Vrooman, and Benton killed him by striking him in the head and chest with a blunt object.

The writ identifies four causes of action against Connors: civil conspiracy, wrongful death, intentional infliction of emotional distress, and negligent infliction of emotional distress. The writ alleges the following facts regarding Connors: (1) "Defendant Brooks spoke with Defendant Michael Connors and informed him that he would be sending him a package and that if anyone asked, Defendant Connors was instructed by Defendant

Brooks to tell them [*sic*] that the package contained steak knives"; (2) "In furtherance of the conspiracy, Defendant Brooks forwarded a package containing a stun gun, hand cuffs, and/or pepper spray via [F]ederal [E]xpress to 145 North Road, Deerfield, New Hampshire, Defendant Connors's residence at that time"; (3) "Defendant Brooks requested from Defendant Connors that he, and other herein named defendants, be allowed to use Defendant Connors' property . . . ."

The trial court found that as to Connors the writ does not contain "evidence of either subjective or objective intent to do harm to Reid." It noted that the plaintiffs agree that Connors was not on the property the day of the murder. The trial court also noted that the plaintiffs do not allege that Connors knew the contents of the package he received from Brooks, that he agreed to let Brooks use his property, or that Connors was aware of the plot to harm Reid. Connors argued to the trial court that he was never indicted by the State for conspiracy to commit murder, that in three criminal trials he testified that he had no knowledge of the murder plan, and that he denied Brooks's request to use his property.

At all relevant times, Connors was covered by a homeowner's insurance policy issued by Northern Security. Section II of the policy provides defense and indemnity to an insured "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies." An "occurrence" is defined elsewhere in the policy as: "[a]n accident . . . which results, during the policy period in: a) 'bodily injury'; or b) 'property damage.' "

A provision entitled "Section II-Exclusion" provides that the policy does not cover bodily injury or property damage that is expected or intended by the insured (intentional acts exclusion), or that arises out of sexual molestation, corporal punishment, or physical or mental abuse (physical abuse exclusion).

Connors's policy also includes a "Homeowners Coverage Enhancement Amendment" (enhancement amendment), which expands the definition of "bodily injury" to include "personal injury." "Personal injury" is defined as: injury arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment, or malicious prosecution;

2. Libel, slander or defamation of character, or

3. Invasion of privacy, wrongful eviction or wrongful entry.

The enhancement amendment also contains the following sentence: "Section II Exclusions do not apply to personal injury." As stated in Northern

Security's brief, "Northern denied coverage because the conduct attributed to Connors does not constitute an 'occurrence,' and the acts are excluded by the policy's physical abuse exclusion."

Following the filing of cross-motions for summary judgment, the trial court ruled in favor of Connors, concluding that Northern Security has an obligation to defend Connors on two claims. While the trial court recognized that "[t]he parties generally agree that intentional acts are not covered by the policy," it found that (1) negligent infliction of emotional distress and conspiracy to commit false imprisonment were acts covered by Connors's policy, and (2) the covered alleged acts were not inextricably intertwined with any non-covered alleged acts.

On appeal, Northern Security argues that: (1) the personal injury endorsement for false imprisonment claims is not triggered by a claim for civil conspiracy to commit false imprisonment; (2) the alleged conduct does not meet the policy's definition of an "accident" or "occurrence," as the elements of civil conspiracy require non-covered intentional conduct; (3) any claim of false imprisonment is inextricably intertwined with an overall intentional plan to murder Reid, thus precluding coverage; and (4) the damages sought by the estate and family members constitute damages for Reid's wrongful death.

Connors and the other respondents disagree and argue that the enhancement amendment creates an ambiguity because it purports to cover claims of false imprisonment, an intentional tort, while the underlying policy precludes coverage for intentional acts. They argue that because ambiguities must be construed in favor of coverage, we should uphold the trial court's finding of coverage.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 482 (2003). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. *Id.* We review the trial court's application of the law to the facts *de novo*. *Id.*

Resolution of this dispute requires us to interpret the insurance policy. Interpretation of an insurance policy is a question of law. *Philbrick v. Liberty Mut. Fire Ins. Co.*, 156 N.H. 389, 390 (2007). We construe the language of an insurance policy as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole. *Id.* Where the terms of the policy are clear and unambiguous, we accord the language its natural and ordinary meaning. *Id.* at 391.

However, if the policy is reasonably susceptible to more than one interpretation and one interpretation favors coverage, the policy will be construed in favor of the insured and against the insurer. *Id.* Absent a statutory provision or public policy to the contrary, an insurance company is free to limit its liability through an exclusion written in clear and unambiguous policy language. *Id.* For exclusionary language to be considered clear and unambiguous, two parties cannot reasonably disagree about its meaning. *Id.* Pursuant to RSA 491:22-a (2010), the burden of proving lack of insurance coverage is on the insurer.

An insurer's obligation to defend its insured is determined by whether "the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy." *State Farm Ins. Co. v. Bruns*, 156 N.H. 708, 710 (2008). In considering whether a duty to defend exists based on the sufficiency of the pleadings, we consider the reasonable expectations of the insured as to its rights under the policy. *Id.* An insurer's obligation is not merely to defend in cases of perfect declarations, but also in cases where, by any reasonable intendment of the pleadings, liability of the insured can be inferred, and neither ambiguity nor inconsistency in the underlying writ can justify escape of the insurer from its obligation to defend. *Id.* In cases of doubt as to whether the writ against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. *Id.*

Northern Security concedes that the policy with the enhancement amendment covers false imprisonment claims. Its counsel agreed at oral argument that coverage is provided for the offenses enumerated in the amendment, regardless of whether the injuries arising out of those offenses were expected or intended; the amendment specifically states that "Section II Exclusions do not apply to personal injury." Therefore, the provision that excludes expected or intended bodily injury from coverage does not apply to false imprisonment claims.

Northern Security argues, however, that "the personal injury endorsement for false imprisonment claims was not properly triggered" because no cause of action for false imprisonment is alleged as to Connors. Northern Security argues that because Connors did not personally commit false imprisonment, there is no coverage for his alleged role in a civil conspiracy to commit false imprisonment. We disagree. We consider the reasonable expectations of the insured in determining whether a duty to defend exists. *Bruns*, 156 N.H. at 710. We conclude that an insured would reasonably expect that if there is coverage for false imprisonment, there is also coverage for conspiracy to commit false imprisonment. *See Capano Management Co. v. Transcontinental Ins. Co.*, 78 F. Supp. 2d 320, 331-32

(D. Del. 1999) ("Because there is a duty to defend the underlying wrong . . . there is a corresponding duty to defend the civil conspiracy claim.").

■ Northern Security also argues that "[t]he intentional nature of the conspiracy tort means that it cannot, because of its very essence, be an accident." This argument is unavailing because, as discussed above, the policy does not apply the intentional acts exclusion to the personal injury offenses listed in the enhancement amendment. Moreover, the cases cited by the petitioner for the proposition that a conspiracy does not constitute an occurrence are all distinguishable. *See State Farm Fire and Cas. Co. v. Weaver*, 585 F. Supp. 2d 722, 729 (D. S.C. 2008); *Fibreboard v. Hartford Acc. and Indem.*, 20 Cal. Rptr. 2d 376, 387 (Ct. App. 1993); *Fire Ins. Exchange v. Bentley*, 953 P.2d 1297, 1301 (Colo. Ct. App. 1998); *West Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 495 (W.Va. 2004). In these cases, either the claims were governed by an intentional acts exclusion provision, *see State Farm Fire and Cas. Co.*, 585 F. Supp. 2d at 729; *Fire Ins. Exchange*, 953 P.2d at 1301; *West Virginia Fire & Cas. Co.*, 602 S.E.2d at 495, or the court specifically ruled that the underlying offense was not covered by the policy, *see Fibreboard*, 20 Cal. Rptr. 2d at 387. None involved a personal injury endorsement that covered the underlying offense and limited the intentional acts exclusion, as is the case here. Further, to the extent that in this case, the policy's definition of an occurrence as an "accident," a term itself undefined, creates an ambiguity when applied to claims arising out of the enumerated personal injury offenses, we must construe that ambiguity in favor of coverage. *Philbrick*, 156 N.H. at 391.

■ Northern Security further argues that coverage is excluded because the alleged conspiracy to falsely imprison Reid and the claim for negligent infliction of emotional distress are inextricably linked to Reid's murder, for which there is no coverage. In *Bruns*, we stated the rule that:

> [w]here the facts reveal that potentially covered acts are inextricably intertwined with and dependent upon the commission of uncovered acts, an insurer will not be required to defend. If, however, there is a genuine dispute as to the interconnectedness of the claims, or where it is clear that the covered and uncovered claims may be separated, a duty to defend may exist and summary judgment must be denied.

*Bruns*, 156 N.H. at 716. Here, the trial court concluded that there was at least a dispute as to whether the covered claims and the uncovered claims were inextricably intertwined. We note that the parties do not argue that the interconnectedness of the claim for negligent infliction of emotional distress should be analyzed separately from the civil conspiracy count.

In *Bruns*, the writ against the insured alleged counts for, among other things, sexual assault, false imprisonment and invasion of privacy. *Id.* at 709. We held that the false imprisonment and invasion of privacy counts were inextricably linked to the sexual assaults. *Id.* at 718. The plaintiff in that case alleged that the false imprisonment was the result of the insured's "grooming" of the victim and "prior conduct," but we noted that the only prior conduct alleged was sexual abuse. *Id.* at 717-18. The invasion of privacy count allegedly included "psychological and emotional imprisonment and brainwashing" of the minor plaintiff, which we interpreted as a reference to the alleged sexual assaults and grooming. *Id.* at 717. Under these circumstances, we held that "any false imprisonment . . . is the result of the sexual abuse," and the claims as alleged were "inextricably intertwined with and dependent upon the uncovered sexual assault claims." *Id.* at 717-18.

Citing *Auto-Owners Insurance Co. v. Todd*, 547 N.W.2d 696 (Minn. 1996), we established in *Bruns* that a court must look to the overall intentional plan of the insured to determine coverage. *Bruns*, 156 N.H. at 715. In *Todd*, the insured had sexually assaulted the victim three times over the course of several hours and had kept the victim in bed with him between the assaults and after the final assault. *Todd*, 547 N.W.2d at 697. The Minnesota Supreme Court rejected the suggestion that the false imprisonment claim was based on acts of the insured which could be isolated from the assaults. *Id.* at 699. Instead, it held that the analysis should turn on the overall intentional plan of the insured, which the parties agreed was to perpetrate a sexual assault. *Id.*

The Eleventh Circuit, in contrast, determined that the facts of a false imprisonment claim were separable from a sexual assault in *First Specialty Insurance v. 633 Partners, Ltd.*, 300 Fed. Appx. 777 (11th Cir. 2008). In that case, the victim was approached by a security guard employed by the insured in a building owned by the insured. The security guard "detained [the victim] in a building hallway, forced her to enter an empty, locked stairwell, dragged her down a flight of stairs, and then tried to rape and sexually assault her three separate times." *First Specialty Ins.*, 300 Fed. Appx. at 784. "These events took place over a thirty-five to forty-minute time span." *Id.* at 780. The district court found that the covered count of false imprisonment was inherently intertwined with an uncovered assault and battery count. *Id.* at 784. The court of appeals reversed, noting in particular that "the complaint repeatedly discussed the assault as a separate event later in time than the original false imprisonment," and characterized the false imprisonment as "a distinct, preceding incident that did not necessarily have to result in [the] assault and battery." *Id.* The court concluded, "Though temporal displacement does not automatically imply

narrative disjunction, it provides a basis for differentiating between the two events, especially since the complaint lacks any clear evidence of connectedness." *Id.*

We believe this case requires a similar result. "[A] court must compare the policy language with the *facts* pled in the underlying suit to see if the claim falls within the express terms of the policy; the legal nomenclature the plaintiff uses to frame the suit is relatively unimportant." *Bruns*, 156 N.H. at 713. Accordingly, we consider the facts as pled, and not the writ's conclusory allegation that Connors's conduct was in furtherance of a conspiracy to falsely imprison, terrorize, assault, batter, and cause the death of Reid. As stated above, the facts pled in the writ concerning Connors are few: (1) that Brooks told Connors he was sending him a package and instructed him, if anyone asked, to say that it contained steak knives; (2) that Brooks sent Connors a package, which contained a stun gun, handcuffs, and/or pepper spray; and (3) that Brooks asked Connors if Brooks and the other defendants could use Connors's property.

These facts do not support a conclusion, as a matter of law, that Connors's actions were inextricably intertwined with the alleged murder conspiracy. Connors's overall intentional plan is unclear, and the writ lacks any factual assertions connecting Connors's conduct and the uncovered wrongful death allegations.

"In cases of doubt as to whether the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor." *Id.* at 710. As the Supreme Court of California explained, if the interconnectedness of the insured's conduct is disputed and if the evidence does not permit the court to determine whether a claim is part of or independent of uncovered acts, then factual issues exist precluding summary judgment in the insurer's favor. *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 798 (Cal. 1993). "Indeed, the duty to defend is then *established*, absent additional evidence bearing on this issue." *Id.* In this case, we agree with the trial court that there is a genuine dispute as to the interconnectedness of the claims, and, therefore, Northern Security has the duty to defend the civil conspiracy and negligent infliction of emotional distress counts.

In challenging the trial court's order, Northern Security also argues that the damages sought by the writ all arise out of Reid's uncovered murder, citing our decisions in *Preferred National Insurance Co. v. Docusearch*, 149 N.H. 759, 763 (2003), and *Philbrick*, 156 N.H. at 392, for the proposition that where the alleged damages resulting from a claim arise entirely out of an act that would not be covered, the claim is likewise

excluded. They also assert that coverage for the negligent infliction of emotional distress claim is barred by the physical abuse exclusion. These arguments are apparently made for the first time on appeal. Nothing in the record before us demonstrates that either argument was made below. They are not mentioned in the trial court's order. Northern Security has neither cited the portion of the record in which these arguments were raised nor provided us with a copy of its petition for summary judgment. *See* SUP. CT. R. 13, 16(3)(b); *see also Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004) (holding that the failure of the moving party to demonstrate where each question presented on appeal was raised below may be considered by the court regardless of whether the opposing party objects on those grounds). Therefore, we do not address either argument.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, J., concurred.