IKUTA, Circuit Judge,
dissenting:
The complaint filed against Gilson presents the common sense proposition that, in an aircraft like an ultralight, if a big man loses consciousness and becomes (in effect) dead weight, the aircraft is likely to crash. Accordingly, the complaint argues, Gilson can be held liable for lying about his health on the medical form required before taking a seat in the two-seater. More specifically, the complaint alleges:
The totality of the circumstances make it more likely than not that the death of Joel Bitow was caused by a medical emergency experienced by Mr. Gilson. Mr. Gilson was larger than Joel Bitow and, upon information and belief, that is, according to persons expert in the operation of ultra light aircraft, the weight of the student pilot impacting the pilot or even the weight of an unconscious or deceased person shifting without control in the student pilot’s seat would make it impossible for the pilot to control the aircraft.
Thus, the crash occurred “as a result of [Gilson] becoming unconscious, dying in mid-flight, or otherwise losing control of his movements.” The complaint further alleges that Gilson should have known that “his health was of such a precarious nature that he could easily not be able to control his movements and, as a result, cause the crash of the ultra light aircraft.” As a result, according to the complaint, Gilson “breached his duty to Joel Bitow by lying about his medical condition.”
The insurance company argues that because the complaint also alleges that Gil-son had to “participate in the weight shifts, in synch with the pilot,” the complaint’s theory of liability requires the jury to find that Gilson was an operator of the aircraft. But this is merely an alternate theory of liability, and the complaint can easily be read as claiming that Gilson’s collapse would have made it impossible for Bitow to fly the aircraft regardless of any weight-shifting requirement. Nor is it certain that plaintiff could prove that Gilson was an operator: appellant’s expert witness testified in his deposition that the passenger in such an aircraft is not a pilot and does “nothing” unless the pilot directs him to take some action. And the parties have *613 not cited any state law establishing that participating in weight shifts even constitutes “operating” an aircraft. In sum, Gil-son’s liability does not necessarily turn on proof that Gilson breached a duty to serve as an operator of the ultralight.
It is well established in New Hampshire law that if a complaint alleges a covered claim against the insured under any reasonable reading of the pleadings, the insurance company has a duty to defend. State Farm Ins. Co. v. Bruns, 156 N.H. 708, 942 A.2d 1275, 1278 (2008). “In cases of doubt as to whether the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured’s favor.” Id. Further, on summary judgment, we are to consider the evidence, and all inferences properly drawn from it, in the light most favorable to the non-moving party. Id. at 1277.
Here, considering the facts in the light most favorable to appellant, and given the absence of state law guidance on the crucial question of what constitutes “operating” an aircraft, an Arizona jury could hold Gilson liable for negligence under this complaint regardless whether the jury found he was the “operator” of the aircraft in some legal sense. At a minimum, there is doubt as to whether the complaint alleges a covered claim. Cf. Bruns, 942 A.2d at 1278; Happy House Amusement, Inc. v. N.H. Ins. Co., 135 N.H. 719, 609 A.2d 1231, 1232 (1992) (“[Njeither ambiguity, inconsistency, nor duplicity in the [underlying plaintiffs] complaint or declaration can justify escape of the insurer from its obligation to defend.” (alteration in original) (quoting 14 M. Rhodes, Couch on Insurance 2d § 51:49 (rev. ed.1982)) (internal quotation marks omitted)). Under these circumstances, I would hold that Metropolitan had a duty to defend. Therefore, I respectfully dissent.