Rockingham
No. 2006-945

STEVEN WEBSTER & a.

v.

ACADIA INSURANCE COMPANY

Argued: September 19, 2007
Opinion Issued: October 17, 2007

*D'Amante Couser Steiner Pellerin, P.A.*, of Concord (*R. James Steiner* on the brief and orally), for the plaintiffs

*Getman, Stacey, Schulthess & Steere, P.A.*, of Bedford (*Naomi L. Mooney* and *Jill A. DeMello* on the brief, and *Ms. Mooney* orally), for the defendant.

GALWAY, J. The plaintiffs, Steven Webster and Dutton & Garfield, Inc., appeal the decision of the Trial Court (*Fitzgerald*, J.) granting summary

judgment to the defendant, Acadia Insurance Company, in the plaintiffs' breach of contract action. We reverse and remand.

The following facts were found by the trial court or are not in dispute. In 1991, the Winnisquam Regional School District (WRSD) hired the plaintiffs to perform work on the roof of its middle school. Specifically, the plaintiffs were to remove the existing outermost roof membrane, replace any damaged insulation, and install a new standing, seamless metal roof membrane. This type of roof membrane is fastened to the building using metal clips, and is not bolted to the ceiling beams, called purlins.

In March 2001, the school discovered structural deficiencies with the roof after a parent observed buckling in the gymnasium's purlins. Consequently, WRSD closed the gymnasium for an unspecified period of time to assess the damage. Because of the damage to the roof, on October 19, 2001, WRSD filed suit against the plaintiffs claiming negligence, negligent misrepresentation, breach of express warranty, professional negligence, and respondeat superior.

From November 1, 2000, through November 1, 2001, the plaintiffs held a general liability insurance policy with the defendant. The plaintiffs timely notified the defendant of the WRSD suit, and requested a defense and coverage for any liability. By letter dated August 5, 2002, the defendant denied the plaintiffs' requests, finding WRSD's writ did not contain allegations of property damage as required by the policy, and that several exclusions to coverage would apply. The WRSD suit came to final judgment following a jury trial and appeal to this court. *See Winnisquam Reg. Sch. Dist. v. Levine*, 152 N.H. 537 (2005). The plaintiffs subsequently filed the instant action to recover their defense costs in the WRSD suit, asserting WRSD's writ contained allegations of property damage by virtue of physical injury to the purlins and loss of use of the school gymnasium. Both parties moved for summary judgment. The trial court granted the defendant's motion and denied the plaintiffs' motion, ruling that WRSD's writ did not allege property damage, and, in the alternative, that coverage would be barred by the policy's "impaired property" exclusion. This appeal followed.

On appeal, the plaintiffs assert: (1) the allegations in the writ regarding damage to the purlins constitute property damage under the policy; (2) the closure of the school gymnasium constitutes a loss of use, and, thus, is also an allegation of property damage under the policy; and (3) the "impaired property" exclusion does not apply. The defendant argues the trial court correctly granted summary judgment because: (1) there has been no "occurrence" under the terms of the policy; (2) WRSD's writ does not allege property damage to the purlins, or, in the alternative, the purlins were incorporated into the plaintiffs' work product, and thus are not

covered under the policy; (3) the writ does not allege a loss of use under the terms of the policy; and (4) the "impaired property" exclusion would preclude coverage.

When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *St. Onge v. MacDonald*, 154 N.H. 768, 770 (2007). If no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

■ It is well-settled in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy. *Broom v. Continental Cas. Co.*, 152 N.H. 749, 753 (2005). In considering whether a duty to defend exists based upon the sufficiency of the pleadings, we consider the reasonable expectations of the insured as to its rights under the policy. *Id.*

■ We have said, "An insurer's obligation is not merely to defend in cases of perfect declarations, but also in cases where by any reasonable intendment of the pleadings liability of the insured can be inferred, and neither ambiguity nor inconsistency in the underlying plaintiff's complaint can justify escape of the insurer from its obligation to defend." *Id.* at 754 (quotations, brackets and ellipses omitted). In case of doubt as to whether the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. *Id.*

In the underlying writ, WRSD specifically alleged that the purlins in the gymnasium had buckled and "some separation between the purlin webs and support clips at the building frame" was present. The writ indicated that the purlins were missing bolts and were not properly aligned. In addition, the writ alleged that "many roof purlins showed bowing, the early stages of rolling or lateral buckling . . . ."

The plaintiffs argue these allegations sufficiently raise a claim of physical injury to the gymnasium's purlins to fall within the scope of "property damage" under the terms of the policy. By contrast, the defendant asserts that they merely support a claim of faulty workmanship, and do not allege property damage independent of the deficient roof work. Our analysis necessarily begins with an examination of the policy language. *See Broom*, 152 N.H. at 753. The interpretation of insurance policy language is a question of law, which we review *de novo. Hartley v. Elec. Ins. Co.*, 154 N.H. 687, 688 (2007). We construe the language as would a reasonable person in the position of the insured based upon a more

than casual reading of the policy as a whole. *Id.* Policy terms are construed objectively; where the terms are clear and unambiguous, we accord the language its natural and ordinary meaning. *Id.*

The plaintiffs' policy provides, "[Acadia] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Acadia] will have the right and duty to defend the insured against any 'suit' seeking those damages." The policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"[P]roperty suffers physical, tangible injury when the property is altered in appearance, shape, color or in some other material dimension." 9A S. PLITT, D. MALDONADO & J. ROGERS, COUCH ON INSURANCE 3D § 129:6, at 129-16 to 129-17 (Thomson/West 2005).

We have previously held that a writ alleged property damage for purposes of an indemnity insurance policy when it "alleged actual damage" to property other than the work product of the insured. *High Country Assocs. v. N.H. Ins. Co.*, 139 N.H. 39, 43 (1994). In *High Country*, the underlying action involved claims for negligence and breach of an implied warranty of workmanlike quality, specifically alleging that the insured's faulty design, selection of materials, and construction of the damaged condominium units resulted in "substantial moisture seepage into the buildings, causing mildew and rotting of the walls, and loss of structural integrity." *Id.* at 41. Reviewing the underlying writ, we held that these allegations were claims for the "water-damaged walls, not the diminution in value or cost of repairing work of inferior quality." *Id.* at 43. We specifically distinguished between negligent construction that resulted in property damage and merely seeking damages for the negligent construction. *Id.* By alleging actual damage in the form of mildew, rot, and loss of structural integrity, the underlying writ was "not simply a claim for the contractor's defective work," but also a claim for the damage to other property suffered as a result. *Id.*

■ Similarly, WRSD's writ raises claims beyond the defective roof replacement, as it contains allegations of actual damage to the purlins. WRSD explicitly alleges alteration of the purlins' appearance and shape, including buckling, bowing, lateral movement, and separation of the

purlins from the building frame. The writ also summarizes several engineering reports that detail this damage to the purlins. WRSD asserts that these alterations were a direct result of the plaintiffs' negligent roof design and replacement. Like the mildew and rot in *High Country*, the buckling, separation, and other alterations of the purlins represent actual damage to property separate and distinct from the plaintiffs' work product—the metal roof membrane. As such, we conclude that WRSD's writ alleges physical injury to tangible property and thus satisfies the policy's definition of property damage. Consequently, the writ alleges "damages because of ... 'property damage' to which this insurance applies," thereby triggering the defendant's "right and duty to defend."

The defendant asserts that the purlins did not sustain physical injury because the buckling was only temporary and the purlins did not require repair or replacement. We are not persuaded by this argument. Significantly, the defendant does not suggest that the buckling, separation from the building frame, or the other alterations alleged in the writ could not constitute physical injury. Rather, it essentially argues that, despite the bracing, bolts and other supports affixed to the purlins to remedy the bowing, any alteration of the purlins is so minimal that it should not be considered property damage. However, as the plaintiffs correctly noted, the policy does not prescribe a minimum level of property damage necessary to initiate coverage. The policy simply defines property damage, in pertinent part, as "physical injury to tangible property," without limitation or restriction. We read this definition as would a reasonable person in the position of the insured, and conclude that it does not require a minimum measure of damage to fall within the scope of coverage.

The defendant also argues that because the purlins were "incorporated" into the plaintiffs' work product, this is not property damage to work other than the insureds' under the policy. The concept of incorporation is not defined within the policy. However, the common understanding of the term "incorporate" is "to unite with or introduce into something already existent ... so as to form an indistinguishable whole that cannot be restored to the previously separate elements without damage." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1145 (unabridged ed. 2002). Here, it is undisputed that the purlins were part of the original school structure, constructed in 1973, and were not part of the work done by the plaintiffs. In fact, the record reflects that the plaintiffs' replacement work was limited to the metal roof membrane and insulation. Indeed, the record demonstrates that the roof installed by the plaintiffs was not bolted to the purlins. There is no evidence to suggest that the plaintiffs' installation was somehow contingent upon the purlins so as to unite the

two and create an "indistinguishable whole," or two parts that could not be separated without damage. Therefore, we conclude the purlins were not incorporated into the plaintiffs' roof replacement.

The defendant further contends that any property damage is not covered by the policy because there has been no "occurrence." The plaintiffs' policy provides, "This insurance applies to . . . 'property damage' only if: (1) The . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) The . . . 'property damage' occurs during the policy period." "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The defendant does not challenge whether the events leading up to the initial observation of buckling may be considered an occurrence. Rather, relying upon *McAllister v. Peerless Insurance Co.*, 124 N.H. 676 (1984), the defendant argues that the writ does not allege an "occurrence" under the policy because it only claims "faulty workmanship" without damage to other property. However, the defendant's reliance on *McAllister* is misplaced. In that case, we held that the underlying declarations, seeking damages solely for defective work, did not allege an occurrence, noting "[t]he fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship." *Id.* at 680. Applying our holding in *Hull v. Berkshire Mutual Insurance Co.*, 121 N.H. 230 (1981), we observed that "defective work, standing alone, did not result from an occurrence." *Id.* at 681. Unlike in *McAllister*, here, the plaintiffs' alleged defective work does not stand alone. As stated above, the writ alleges actual damage to the purlins, property other than the work of the insured, and does not merely seek damages for the defective roof. Therefore, *McAllister* is not controlling.

■ Further, the writ asserts that the first observation of buckling occurred following a heavy snowstorm, causing an accumulation of approximately two feet of snow on the building's roof. At least some of the damage to the purlins is attributed to this accumulation. We have defined the term "accident" in the context of an "occurrence" to mean "circumstances, not necessarily a sudden and identifiable event, that were unexpected or unintended from the standpoint of the insured." *High Country Assoc.*, 139 N.H. at 44. In *High Country*, we found that the mildew and rot damage alleged in the underlying writ amounted to an occurrence as the damage was "unexpected from the standpoint of High Country Associates and was caused by continuing exposure to moisture seeping through the walls of the units." *Id.* In this case, the writ alleged that some purlins had separated from the building frame and were missing

bolts, in addition to the bowing and buckling. Like in *High Country*, the damage first caused or aggravated by the snowstorm, as alleged in WRSD's writ, was unexpected from the standpoint of the plaintiffs, especially given that its work did not include the purlins. Consistent with *High Country*, the unexpected physical injury to the purlins in this case gave rise to an occurrence under the terms of the policy.

At oral argument, the defendant agreed that a finding of physical injury to the purlins would preclude application of the impaired property exclusion. Having drawn such a conclusion, we do not address that exclusion here. *See* 9A COUCH ON INSURANCE, *supra* § 129:21 at 129-44 ("The purpose of this exclusion is in essence to preclude coverage for loss of use claims arising from faulty work . . . when there is no physical injury to the property.").

Reading this policy as would a reasonable person in the position of the insured, we conclude that the writ alleges property damage caused by an occurrence, creating a duty to defend under the terms of the policy. Having ruled there is property damage for purposes of providing a defense, we need not address the plaintiffs' loss of use claim. Accordingly, we hold that the trial court's grant of summary judgment to the defendant was in error.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.