684 S.E.2d 541

**AUTO OWNERS INSURANCE COMPANY, INC., Appellant,**

v.

**Virginia T. NEWMAN and Trinity Construction, Inc., Respondents.**

No. 26450.

Supreme Court of South Carolina.

Heard Jan. 23, 2008.

Re-filed Sept. 8, 2009.

Rehearing Denied Oct. 21, 2009.

188

C. Mitchell Brown, of Nelson Mullins Riley & Scarborough, and John L. McCants, of Ellis Lawhorne & Sims, both of Columbia, for Appellant.

Frank M. Cisa, of Cisa & Dodds, of Mt. Pleasant, Joseph K. Qualey, of Qualey & Beck, of Charleston, and Michael S. Seekings and Amy E. Melvin, both of Leath Bouch & Crawford, of Charleston, for Respondents.

George E. Mullen and Daniel F. Oberklein, both of Mullen Wylie & Seekings, of Hilton Head Island, for Amicus Curiae South Carolina Community Associations Institute.

Kenneth E. Ormand, Jr., of Ormand Ashley & Gibbons, of Columbia, for Amicus Curiae National Association of Home Builders and Home Builders Association of South Carolina.

David E. Dukes and William C. Wood, Jr., both of Nelson Mullins Riley & Scarborough, of Columbia, and Laura A. Foggon and Parker J. Lavin, both of Wiley Rein, of Washington, D.C., for Amicus Curiae Complex Insurance Claims Litigation Association.

Lawrence M. Hunter, Jr., of Hunter & Foster, of Greenville, for Amicus Curiae Bituminous Casualty Corporation.

Stephen P. Groves, Sr., of Nexsen Pruet, of Charleston, for Amicus Curiae Builders Mutual Insurance Company.

C. Mitchell Brown, William C. Wood, Jr., Matthew D. Patterson, and A. Mattison Bogan, of Nelson Mullins Riley & Scarborough, of Columbia, for Amicus Curiae Harleysville Mutual Insurance Company.

Chief Justice TOAL.

The issuer of a homebuilder's commercial general liability policy sought a declaratory judgment to determine whether the policy covered a homeowner's claim for damages caused by the negligence of a construction subcontractor. The trial court determined that the homeowner's claim fell within the policy's coverage and this appeal followed. We certified the case pursuant to Rule 204(b), SCACR, and affirmed the trial court's decision. We now withdraw our prior opinion and substitute it with this opinion. We affirm in part and reverse in part.

FACTUAL/PROCEDURAL BACKGROUND

Respondent Trinity Construction, Inc. ("Trinity") completed the construction of a home for Respondent Virginia Newman ("Homeowner") in May 1999. Shortly thereafter, the Homeowner filed a claim against Trinity for breach of contract, negligence, and breach of warranty, alleging defective construction primarily related to the installation of the stucco siding. Based on the report of an engineer hired by the Homeowner to inspect the home's construction, the Homeowner alleged that the application of the stucco did not conform to industry standards and that these nonconforming aspects of the stucco installation allowed water to seep into the home causing severe damage to the home's framing and exterior sheathing. The Homeowner and Trinity referred the action to binding arbitration in which an arbitrator issued the Homeowner an award of itemized damages due to the defective construction totaling $55,898.

At the time of construction, Trinity held a commercial general liability (CGL) policy issued by Appellant Auto–Owners Insurance Company ("Auto–Owners"). Following arbitration, Auto–Owners sought a declaratory judgment to determine its rights and obligations under the CGL policy, contending that the damages awarded by the arbitrator were not covered under the policy. The trial court determined that the policy covered the damages because they resulted from an "occurrence" and because Auto–Owners failed to show that any policy exclusions applied. Accordingly, the trial court determined that the CGL policy covered all but four items of the damages provided for in the

arbitration award. Auto–Owners appealed. After certifying the case, we affirmed the trial court's ruling. *Auto–Owners Ins. Co., Inc. v. Newman,* Op. No. 1383 (S.C. Sup. Ct. filed March 10, 2008) (Shearouse Adv. Sh. No. 9 at 63).

On rehearing, we now consider the following issue for review:

Did the trial court err in holding that the damages awarded by the arbitrator for negligent construction were covered under a CGL policy?

### STANDARD OF REVIEW

A declaratory judgment action is neither legal nor equitable, and therefore, the standard of review is determined by the nature of the underlying issue. *Colleton County Taxpayers Ass'n v. Sch. Dist. of Colleton County,* 371 S.C. 224, 231, 638 S.E.2d 685, 688 (2006). When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law. *Auto–Owners Ins. Co. v. Hamin,* 368 S.C. 536, 540, 629 S.E.2d 683, 685 (Ct.App.2006). In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless there is no evidence to reasonably support them. *Id.*

### LAW/ANALYSIS

### A. Negligent construction as an "occurrence" under the policy

Auto–Owners argues that the arbitrator's award for the Homeowner's property damage is not covered by the policy. Specifically, Auto–Owners argues that pursuant to this Court's opinion in *L–J v. Bituminous Fire & Marine Insurance Co.,* 366 S.C. 117, 621 S.E.2d 33 (2005), the subcontractor's defective installation of stucco did not cause an "accident" constituting an "occurrence" subject to coverage under the policy. We disagree.

The CGL policy issued by Auto–Owners in this case is the standard Insurance Services Office (ISO) CGL policy used since 1986 and is identical to that reviewed by this Court in *L–J.* The relevant policy provisions state that Auto Owners will

"pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy further explains that the insurance applies to such "bodily injury" or "property damage" only if it is caused by an "occurrence."

The CGL policy defines many of the particular terms used to outline the scope of its coverage. The policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property," and defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." The policy does not define the term "accident," however, and this Court has found that in the absence of a prescribed definition in the policy, the definition of "accident" is "[a]n unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt." *Green v. United Ins. Co. of America*, 254 S.C. 202, 206, 174 S.E.2d 400, 402 (1970).

We begin our analysis in this case with a review of *L–J*, which all parties, as well as the trial court, assert in support of their respective resolutions of the issue. In *L–J*, a developer hired L–J, Inc. ("L–J") as contractor for the site development and road construction in a subdivision development. 366 S.C. at 119, 621 S.E.2d at 34. L–J hired subcontractors to perform most of the work, and four years after construction was completed, the roads began to deteriorate due to negligent road design, preparation, and construction. *Id.* The developer sued L–J and the parties settled. L–J subsequently sought indemnification from Bituminous Fire and Marine Insurance Company ("Bituminous") and three other insurance companies who insured L–J under various CGL policies. *Id.* Bituminous refused to indemnify L–J and brought a declaratory judgment action to determine whether its CGL policy issued to L–J covered the damage to the roads caused by the negligent construction. *Id.* at 120, 621 S.E.2d at 34.

This Court found that although the deterioration to the roadways may have constituted property damage, the various negligent acts of the subcontractors upon which the developer based its claim did not constitute an "occurrence" for which

the CGL policy provided coverage. *Id.* at 123, 621 S.E.2d at 36. Specifically, the Court found that the developer's claim alleged negligent construction causing damage only to the defective work product itself (i.e. the roadway), and that such a claim was merely one for faulty workmanship. *Id.* Reasoning that "faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions," the Court held that the developer's claim did not allege an "occurrence" falling within the policy's scope of coverage. *Id. See also Isle of Palms Pest Control Co. v. Monticello Ins. Co.,* 319 S.C. 12, 16, 459 S.E.2d 318, 320 (Ct.App.1994) (explaining that a claim solely for economic losses resulting from faulty workmanship is part of an insured's contractual liability which a CGL policy is not intended to cover).

The *L–J* court went on to explain, however, that a CGL policy may provide coverage where faulty workmanship causes third party bodily injury or damage to other property besides the defective work product. *Id.* n. 4. To illustrate this theory, the Court examined the case of *High Country Associates v. New Hampshire Insurance Co.,* in which a condominium homeowners' association sued the condominium builder seeking damages allegedly due to negligent construction of the condominium buildings. 139 N.H. 39, 648 A.2d 474, 476 (1994). The complaint alleged that the continuous moisture intrusion resulting from a subcontractor's defective installation of siding resulted in moisture seeping into the buildings, which caused widespread decay of the interior and exterior walls and loss of structural integrity over a nine-year period. *Id.* The *High Country* court found that the complaint was not simply a claim for faulty workmanship seeking damages to repair the defective siding itself, but rather, was a claim for negligent construction resulting in damage to other property. *Id.* at 477. The court determined that the continuous exposure to moisture due to the defective installation of siding constituted an "occurrence" under the policy and that, in this way, the homeowners' association had properly "alleged negligent construction that resulted in an occurrence, rather than an occurrence of alleged negligent construction." *Id.* at 478. Accordingly, *High Country* held that the CGL policy would cover the

homeowners' association's claim against the builder, if successful. *Id.*

We find *High Country* equally instructive in determining whether a CGL policy provides coverage in the instant case where an arbitrator determined that the Homeowner incurred damages as a result of the negligent application of stucco by Trinity's subcontractor. Specifically, the arbitrator found that the defective stucco allowed for continuous moisture intrusion resulting in substantial water damage to the home's exterior sheathing and wooden framing.[1] In our view, these findings establish that there was "property damage" beyond that of the defective work product itself, and that therefore, the Homeowner's claim is not merely a claim for faulty workmanship typically excluded under a CGL policy.

Furthermore, although the subcontractor's negligent application of the stucco does not on its own constitute an "occurrence," we find that the continuous moisture intrusion resulting from the subcontractor's negligence is an "occurrence" as defined by the CGL policy. In our view, the continuous moisture intrusion into the home was "an unexpected happening or event" not intended by Trinity—in other words, an "accident"—involving "continuous or repeated exposure to substantially the same harmful conditions." *See Travelers Indem. Co. of Am. v. Moore & Assocs.,* 216 S.W.3d 302, 309 (Tenn.2007) (holding that whether an "accident" has occurred under the terms of a CGL policy requires a court to determine whether damages would have been foreseeable if the insured had completed the work properly). Accordingly, we hold that the subcontractor's negligence resulted in an "occurrence" falling within the CGL policy's initial grant of coverage for the resulting "property damage" to the home's framing and exterior sheathing. *See also Penn. Mfrs. Assoc. Ins. Co. v. Dargan Constr. Co.,* 2006 WL 2038270, 2006 U.S. Dist. LEXIS 53366 (D.S.C. July 13, 2006).

---

1. According to expert testimony from the consulting engineer hired by the Homeowner, the subcontractor's application of stucco did not meet applicable building code requirements and deviated from industry standards. The expert testified that the subcontractor did not apply the stucco to the required thickness; failed to install a weep system or flashing around doors and windows; and used improper caulking and banding methods.

We note that interpreting "occurrence" as we do in this case gives effect to the subcontractor exception to the "your work" exclusion in the standard CGL policy. On this matter, a brief history of CGL policies is instructive. A CGL policy in the home construction industry is designed to cover the risks faced by homebuilders when a homeowner asserts a post-construction claim against the builder for damage to the home caused by alleged construction defects. *See* Rowland H. Long, *The Law of Liability Insurance,* § 3.06(1) (2007). Several construction-specific exclusions in the standard CGL policy exclude from coverage certain types of property damage attributable to risks outside the scope of CGL recovery. *See id.* The primary exclusion is the "your work" exclusion which provides that the policy will not cover " 'property damage' to 'your work.' " In 1986, the insurance industry amended the "your work" exclusion to provide that even if the property damage is to the builder's own work, the "your work" exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." *See French v. Assurance Co. of America,* 448 F.3d 693, 701 (4th Cir.2006) (discussing the evolution of the standard CGL policy). In doing so, the insurance industry extended liability coverage for property damage to the contractor's completed work arising out of work performed by the subcontractor.[2] *Id.*

The facts of this case establish exactly the type of property damage the CGL policy was intended to cover after the 1986 amendment to the "your work" exclusion. In construing the provisions of an insurance policy, the Court must consider the policy as a whole and adopt a construction that gives effect to the whole instrument and to each of its various parts and provisions. *Yarborough v. Phoenix Mut. Life Ins.*

---

**2.** *C.D. Walters Construction Co., Inc. v. Fireman's Insurance Co.,* cited by Auto–Owners in support of its argument, is distinguishable from the instant case because it denied coverage under a CGL policy based on the "your work" policy exclusion before the 1986 modification to cover damage resulting from subcontractor negligence. 281 S.C. 593, 597–98, 316 S.E.2d 709, 712 (Ct.App.1984).

We would also distinguish this Court's decision in *Century Indemnity Co. v. Golden Hills Builders, Inc.,* 348 S.C. 559, 561 S.E.2d 355 (2002), because the coverage period for the policy at issue expired while the contractor was still in possession of the home.

*Co.*, 266 S.C. 584, 592, 225 S.E.2d 344, 349 (1976). To interpret "occurrence" as narrowly as Auto–Owners suggests would mean that any time a subcontractor's negligence led to the damage of any part of the contractor's overall project, a CGL insurer could deny recovery on the basis that it is excluded from the policy's initial grant of coverage. This interpretation would render both the "your work" exclusion and the subcontractor's exception to the "your work" exclusion in the policy meaningless.[3] *See French*, 448 F.3d at 705–06.

For these reasons, we hold that the trial court correctly found that the negligent application of stucco resulted in an "occurrence" of water intrusion, causing "property damage" that is covered under Trinity's CGL policy.

### B. Operation of policy exclusion to exclude damages awarded for replacing the substrate

■ Auto–Owners argues that even if the subcontractor's negligent application of stucco resulted in an "occurrence" under the CGL policy, coverage for the resulting property damage is nevertheless barred by a policy exclusion. We disagree.

An exclusion found in the standard CGL policy prohibits coverage for " 'property damage' expected or intended from the standpoint of the insured."[4] Auto–Owners claims that pursuant to this exclusion, damages awarded by the arbitrator related to the framing and exterior sheathing of the home are

---

3. In adopting this interpretation, the dissent asserts that we need not "look at the terms of a policy's exclusion in order to determine coverage." Nevertheless, in order to determine the proper meaning of the term "occurrence," we must read the policy as a whole and consider "the context and subject matter of the insurance contract." *Schulmeyer v. State Farm Fire and Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003). We decline to adopt any construction of the CGL policy that renders a significant exclusion meaningless, notwithstanding the objections voiced by the dissent.

4. We note that instead of containing an exclusion to this effect, the pre–1986 CGL policy included this language in its initial grant of coverage as part of the definition of "occurrence." *See French*, 448 F.3d at 701. Although, in our view, an analysis under our modern jurisprudence as to whether or not there was an "occurrence" essentially subsumes this particular 1986 amendment to the policy, we set forth an analysis of the exclusion's applicability in this case for the sake of completeness.

not covered under the CGL policy because a construction professional would expect substantial moisture intrusion from defective stucco to result in these types of damages. In our opinion, and in the absence of any evidence otherwise, it is unreasonable to believe that Trinity expected or intended its subcontractor to perform negligently. Therefore, Trinity could not have expected or intended the resulting property damage. *Cf. Lamar Homes v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex.2007) ("But a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly."). Accordingly, we hold that the property damage to the home's framing and exterior sheathing was not expected or intended by Trinity, and therefore, coverage of the Homeowner's property damage is not barred by this exclusion contained in the CGL policy.

## C. Damages awarded for replacement of the defective stucco

■ Auto–Owners finally argues that even if an "occurrence" warrants recovery for the Homeowner's property damage, the trial court erred in determining that the CGL policy covered the arbitrator's itemized allowance for replacing and repairing the defective stucco itself as an incidental cost to repairing the damage to other property. We agree.

■ The standard CGL policy grants the insured broad liability coverage for property damage and bodily injury which is then narrowed by a number of exclusions. Each exclusion in the policy must be read and applied independently of every other exclusion. *Engineered Products, Inc. v. Aetna Cas. & Sur. Co.*, 295 S.C. 375, 378–79, 368 S.E.2d 674, 675–76 (Ct.App. 1988) (quoting *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 795 (1979)).

Although the subcontractor exception preserves coverage for property damage that would otherwise be excluded as "your work," another policy exclusion bars coverage for damage to the defective workmanship itself. Specifically, the policy exclusion provides that the insurance does not cover damages "claimed for any loss, cost or expense ... for the repair, replacement, adjustment, removal or disposal of ... 'Your product'; ... 'Your work'; or ... 'Impaired property';

if such product, work or property is withdrawn ... from use ... because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it." These terms unambiguously prohibit recovery for the cost of removing and replacing the defective stucco—even when the replacement of the defective work may be incidental to the repair of property damage covered by the policy—and serve as one of the bases for this Court's acknowledgment that a claim solely for economic losses resulting from faulty workmanship is part of an insured's contractual liability which a CGL policy is not intended to cover. *See L–J*, 366 S.C. at 122, 621 S.E.2d at 35. Accordingly, we hold that any amount in the arbitrator's allowance allotted to the removal and replacement of the defective stucco is not covered under the CGL policy.

Nevertheless, it is not possible from the record before this Court to determine what portion of the arbitrator's itemized list of damages may be attributed to the removal and replacement of the defective stucco, and it is not the purpose of this declaratory judgment action to relitigate the issue of damages. Auto–Owners had an opportunity to raise this matter when the issue of damages was litigated before the arbitrator, who issued a final, binding award on the merits.[5] *See Pittman Mortg. Co. v. Edwards*, 327 S.C. 72, 76, 488 S.E.2d 335, 337 (1997) ("Generally, an arbitration award is conclusive and courts will refuse to review the merits of an award.").

### CONCLUSION

For the foregoing reasons, we affirm the trial court's decision finding that the CGL policy issued by Auto–Owners to Trinity covers the damage awarded by the arbitrator to the Homeowner. Although we reverse the trial court's decision to the extent that it orders recovery under the policy for the removal and replacement of the defective stucco, there is no evidence in the record indicating which damages may be attributed to the removal and replacement of the defective stucco.

---

5. Auto–Owners represented Trinity in binding arbitration, made mandatory by the terms of the insurance contract. Auto–Owners did so with a reservation of rights and an understanding that the coverage issue would be reserved for judicial consideration in a separate proceeding. When the arbitrator determined damages, Auto–Owners did not seek review of or otherwise contest the damages award.

WALLER, BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. We have held that faulty workmanship by a subcontractor which results in property damage only to the work product itself is not an occurrence within the meaning of that term in a comprehensive general liability (CGL) policy. *L–J, Inc. v. Bituminous Fire and Marine Ins. Co.*, 366 S.C. 117, 621 S.E.2d 33 (2005). Here, the general contractor's "work product" is the entire home, including the stucco, the framing, and the exterior sheathing. In my view, there is no coverage under the CGL policy because there is no occurrence, rather only faulty workmanship. *L–J, Inc., supra.*

As we explained in *Century Indemnity Co. v. Golden Hills Bldrs., Inc.*, 348 S.C. 559, 561 S.E.2d 355 (2002):

> A comprehensive general liability policy, such as the one at issue, provides coverage "for all the risks of legal liability encountered by a business entity," with coverage excluded for certain specific risks. Rowland H. Long, L.L.M., *The Law of Liability Insurance*, § 3.06[1] (2001). This type of insurance "is not intended to insure business risks, *i.e.*, risks that are normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage." *Id.* § 10.01[1]. Specifically, "[t]he policies do not insure [an insured's] work itself, but rather, they generally insure consequential risks that stem from that work." *Id. See also Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 459 S.E.2d 318 (Ct.App.1995), *aff'd*, 321 S.C. 310, 468 S.E.2d 304 (1996) (general liability policy is intended to provide coverage for tort liability for physical damage to property of others; it is not intended to provide coverage for insured's contractual liability which causes economic losses); *Sapp v. State Farm Fire & Cas. Co.*, 226 Ga.App. 200, 486 S.E.2d 71, 75 (1997) (noting risk intended to be insured is possibility that work of insured, once completed, will cause bodily injury or *damage to property other than to completed work itself*, and for which insured may be found liable; coverage applicable under CGL policy is for tort liability for injury to persons

and damage to *other* property and not for contractual liability of insured for economic loss because completed work is not that for which the damaged person bargained). *Id.* at 565–66, 561 S.E.2d at 358 (emphasis in original).

Under the relevant provisions of this CGL policy, Auto Owners is responsible for "property damage" that is caused by an "occurrence." "Occurrence" as used in the policy "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Faulty workmanship by subcontractors which leads to deterioration or damages the work product itself is not an accident within the meaning of a CGL policy. *L–J, Inc., supra.*[6] In *L–J,* as the majority notes, we also explained that there may be coverage where faulty workmanship causes third party bodily injury or damage to property other than the contractor's work product. Here, we have neither bodily injury nor damage to anything other than the contractor's work product.

The majority relies on *High Country Assocs. v. New Hampshire Ins. Co.,* 139 N.H. 39, 648 A.2d 474 (1994), and finds that damage caused to other parts of the house by the stucco subcontractor's faulty workmanship is a claim of property damage beyond that of the defective work itself, and thus covered under the policy. I disagree.

As noted above, the "work product"[7] is the entire home constructed by Trinity for the Homeowners. *See L–J, Inc., supra.* While I agree that *High Country* appears to distinguish between the construction of the condominium units themselves (the work product) and the damage done to the structure of these units, a later New Hampshire case which

---

6. In my opinion, the definition of "accident" in *Travelers Indem. Co. of Am. v. Moore & Assoc.,* 216 S.W.3d 302 (Tenn.2007), relied upon by the majority, is fundamentally inconsistent with the definition we adopted in *L–J, Inc., supra. See Gen. Sec. Indem. Co. of Ariz. v. Mtn. States Mut. Cas. Co.,* 205 P.3d 529 (Colo.App.2009) (identifying *L–J, Inc.* as following majority rule that construction defect claims are not accidents under a CGL policy and *Moore* as a minority rule decision).

7. The CGL does not use this term: it is a combination of "your product" and "your work," both terms defined under the contract. Here, we are actually talking about "your work" which means:

   a. work or operations performed by you or on your behalf; and

cites *High Country* makes it clear that coverage under a CGL policy exists only where there is actual damage to property other than the insured's work product. *Webster v. Acadia Ins. Co.*, 156 N.H. 317, 934 A.2d 567 (2007) (CGL coverage where negligent installation of new roof caused damage to preexisting rafters). As I understand *High Country* in light of *Webster*, there would be no coverage here as only Trinity's "work product" has been damaged as a result of the stucco subcontractor's faulty workmanship.

Finally, I do not believe we need look at the terms of a policy's exclusion in order to determine coverage. Under existing South Carolina law, there is no occurrence here, thus no property damage, and therefore no coverage. The "your work" exclusion applies only where there is, in fact, "property damage" to "your work." Absent that threshold showing of coverage, there is no reason to reach the exclusion, much less the subcontractor exception to the exclusion. *Compare Laidlaw Enviro. Serv. (TOC) v. Aetna Cas. & Sur. Co. of Ill.*, 338 S.C. 43, 524 S.E.2d 847 (Ct.App.1999) (exclusion does not create coverage but limits it).

I would reverse.

---

b.    materials, parts or equipment furnished in connection with such work or operations.