**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

First Acceptance Insurance Company, Inc., Respondent,

v.

Tamasha F. Floyd, Individually and as Guardian ad Litem for Jayvon G. A Minor under the age of Eighteen (18) Years of Age; Harry C. Brown as Special Administrator of Kevin M.; Elsa Velasquez Ferro; Gerald Washington; and Vincent Williams; Defendants,

Of whom Tamasha F. Floyd, Individually and as Guardian ad Litem for Jayvon G. A Minor under the age of Eighteen (18) Years of Age is the Appellant.

Appellate Case No. 2024-000069

———————

Appeal From Beaufort County
Jocelyn Newman, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-286
Heard May 7, 2025 – Filed August 6, 2025

———————

**AFFIRMED**

———————

Clifford Bush, III and James Andrew Smith, both of Law Offices of Clifford Bush, III, LLC, of Beaufort, for Appellant.

Wesley Brian Sawyer, of Murphy & Grantland, P.A., of Columbia, for Respondent.

_____

**PER CURIAM:**  In this appeal of a declaratory judgment, Appellant Tamasha F. Floyd, individually and as Guardian ad Litem for Jayvon G., argues the circuit court erred in determining that an automobile insurance policy issued by Respondent First Acceptance Insurance Company, Inc. (First Acceptance) lawfully excluded coverage for any claims arising out of a single-car accident that occurred while an excluded driver was operating the insured vehicle.  Specifically, Appellant argues the court erred by enforcing the exclusion because (1) the insurance policy listed the incorrect year of birth for the excluded driver and (2) the excluded driver was only fourteen years old when the initial policy was issued and thus incapable of obtaining a driver's license or securing his own insurance.  We affirm.

## FACTS

This case arose from a tragic car accident that took the life of the driver, Kevin Morazan,[1] and severely injured the front seat passenger, Jayvon G..[2]  On September 25, 2018, Kevin took the keys to his mom's 2004 Ford Expedition and picked up a few friends.  Kevin, who was seventeen years old and unlicensed, lost control of the car, ran off the road, hit a mailbox, and overturned.  Jayvon's mother brought a negligence suit against Kevin's mother and against the special administrator of Kevin's estate.  In a separate action, First Acceptance—the insurance company that issued the policy for the Ford Expedition—sought a declaration that it had "no duty to defend, indemnify, or make any payments whatsoever for any claims" arising out of the accident because the policy listed Kevin Morazan as an excluded driver.

Two years before the accident, First Acceptance issued a personal automobile insurance policy to Carlos Morazan, Kevin's father.  Carlos applied for this policy at First Acceptance's brick-and-mortar Beaufort agency.  Joe Schlechta, a First Acceptance employee, testified that during the application process, applicants provide information about drivers, vehicles, and requested coverage and the policies are "issued and renewed in reliance upon the truth and accuracy of the representations made in the application for insurance."

_____

[1] Kevin was a minor when the accident occurred.  However, we have included his last name because it is factually significant.

[2] Jayvon was a minor when the accident occurred and is now an adult.  However, we have left out his last name to preserve his privacy.

First Acceptance requires applicants to disclose all household members aged fourteen or older. When Carlos applied for this insurance policy, his son Kevin was fourteen years old. Schlechta explained when an applicant discloses an unlicensed fourteen-year-old as a resident relative, First Acceptance generally excludes them from the policy, but the applicant can choose to include the minor. Accordingly, when Carlos applied for the insurance policy, Kevin would have been listed on the policy and either included or excluded. Schlechta testified that the decision whether to include or exclude a fourteen-year-old resident is entirely up to the applicant.

The application lists Kevin Morazan as an excluded driver. Kevin's birthdate on the application is September 6, 1993, which is the correct day and month but the incorrect year. At trial, the parties stipulated that Kevin's actual birthdate is September 6, 2001.[3] Schlechta confirmed that all information on the application comes from the applicant; the insurance company does not have a database it can use to verify names or birthdates or to confirm that an applicant has disclosed all household residents aged fourteen or older.

The application also includes a "Named Driver Exclusion" form. At trial, the parties stipulated that this form was approved by the Department of Insurance, as required by section 38-77-340 of the South Carolina Code (2015). The form authorizes the exclusion of named individuals "in consideration of the premium charged" and states the insurance company "shall not be liable for damages, losses, or claims arising out of the operation" of the insured vehicle by the excluded driver "whether or not such operation or use was with the express or implied permission of its owner." Kevin Morazan is listed on this form as an excluded driver. Like elsewhere on the application, the form has the correct day and month for Kevin's birthdate but the incorrect year. Additionally, the form describes Kevin's relationship to Carlos as "employee."

The statute that authorizes the named driver exclusion provides that in order for a driver to be effectively excluded, the named insured must declare either that the excluded driver has turned their license in to the Department of Motor Vehicles or that an appropriate policy of liability insurance has been executed in the name of the excluded driver. § 38-77-340. Here, the named driver exclusion form indicates that an appropriate policy of liability insurance had been properly executed in Kevin's name. The bottom of the form states:

---

[3] The application also lists Kevin's marital status as married and has the wrong birth year for Kevin's mother.

> I understand that this agreement will be binding and will apply to and remain in effect for this policy term and all future renewals, reinstatements, replacement policies, or any other changes in my policy unless I notify First Acceptance Insurance Company, Inc. in writing to amend the policy. . . . I further declare that (1) the driver's license of the excluded person has been turned in to the Department of Motor Vehicles, or (2) an appropriate policy of liability insurance (or other security) as may be authorized by law has been properly executed in the name of the person to be excluded.

Carlos's signature appears on the form below this declaration. In accordance with the execution of the form, the policy issued to Carlos includes a named driver exclusion endorsement that excludes Kevin from the policy.

At trial, First Acceptance entered into evidence a renewal declaration to illustrate that the policy issued to Carlos in 2016 remained in place when the accident occurred. The policy still listed Kevin, who at that point was seventeen years old and unlicensed, as an excluded driver. Schlechta testified that First Acceptance's records did not contain any request from Carlos to remove or alter the named driver exclusion form. Carlos did, however, amend the policy to add the 2004 Ford Expedition, which was not listed as a vehicle on the original policy but was included on the policy for the period in which the accident occurred.

The parties agreed to a bench trial. First Acceptance offered the testimony of Schlechta and presented stipulations, exhibits, admissions in the pleadings, and responses to requests for admission. Appellant did not call any witnesses or present any factual evidence. The circuit court found that the policy lawfully excluded coverage of the accident. In its written order, the court found, "The Kevin listed on the Named Driver Exclusion form is Carlos Morazan's son, who was driving the subject vehicle at the time of the accident." Additionally, the court found, "Even if Carlos Morazan had provided the correct year of birth for Kevin, the Policy would have included the Named Driver Exclusion." The court noted the parties did not dispute at trial that the written policy excluded "coverage for any claims arising out of Kevin's operation of the vehicle" and instead argued their respective positions on whether the exclusion was enforceable under South Carolina law. The court concluded that the exclusion was enforceable. Thus, the court determined "First

Acceptance [had] no duty to defend, indemnify, or make any payments whatsoever for any claims arising out of the above-referenced accident." This appeal followed.

## STANDARD OF REVIEW

"Declaratory judgment actions are neither legal nor equitable and, therefore, the standard of review depends on the nature of the underlying issues." *Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009). "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 46, 717 S.E.2d 589, 592 (2011) (quoting *Auto Owners Ins. Co. v. Newman*, 385 S.C. 187, 191, 684 S.E.2d 541, 543 (2009)). "In an action at law tried without a jury, the appellate court will not disturb the [circuit] court's findings of fact unless there is no evidence to reasonably support them." *Id.* at 46–47, 717 S.E.2d at 592 (quoting *Newman*, 385 S.C. at 191, 684 S.E.2d at 543). Further, "[w]hen reviewing an action at law, on appeal of a case tried without a jury, the appellate court's jurisdiction is limited to correction of errors [of] law." *Epworth Children's Home v. Beasley*, 365 S.C. 157, 164, 616 S.E.2d 710, 714 (2005).

## LAW/ANALYSIS

### I. Incorrect birth year (the "two Kevins" theory)

Appellant argues the circuit court erred "when it determined that the named driver exclusion applied to Kevin Morazan (D.O.B. 9/6/2001), the single son of the insured, when the policy's exclusion listed Kevin Morazan (D.O.B. 9/6/1993), a married employee of the insured." In essence, Appellant puts forth a "two Kevins theory": an argument that the policy does not exclude Carlos's son Kevin Morazan but rather excludes some other Kevin Morazan with the same birthday in a different year. This argument is unpreserved.

"It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [circuit court] to be preserved for appellate review." *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). "This principle underlies the long-established preservation requirement that the losing party generally must both present his issues and arguments to the lower court and obtain a ruling before an appellate court will review those issues and arguments." *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000). "If the losing party has raised an issue in the lower court, but the

court fails to rule upon it, the party must file a motion to alter or amend the judgment in order to preserve the issue for appellate review." *Id.*

At trial, Appellant did not make the argument she now makes—that a plain reading of the policy results in the exclusion of an individual other than Carlos's son. Instead, Appellant argued at trial it was "completely against the law and public policy" to exclude a fourteen-year-old. Appellant further argued at trial that Kevin Morazan would not and could not have been excluded if his correct birth year had been listed on the application and that this "mistake" could not be held against an innocent third party. It is clear from these arguments that, at least at trial, Appellant believed Carlos intended to exclude his son Kevin and mistakenly provided the wrong year of birth. However, this presumes that the excluded driver was, in fact, fourteen years old when the policy was issued. If Appellant believed the excluded driver was actually a Kevin Morazan born in 1993 and *not* Carlos's fourteen-year-old son, she would not have claimed the birth year on the policy was a mistake, and she would not have made the argument that it defied public policy to exclude a fourteen-year-old.[4] Thus, the "two Kevins theory" was neither raised to nor ruled upon by the circuit court and is not preserved for our review.[5]

## II. Enforcement

An insurance policy is a contract, and therefore, unambiguous provisions in the policy must be enforced as written. *Goldston v. State Farm Mut. Auto. Ins. Co.*, 358 S.C. 157, 170, 594 S.E.2d 511, 518 (Ct. App. 2004). Courts "must enforce, not write, contracts of insurance" and "must give policy language its plain, ordinary, and popular meaning." *Fritz-Pontiac-Cadillac-Buick v. Goforth*, 312 S.C. 315, 318, 440 S.E.2d 367, 369 (1994). Additionally, courts "should not torture the meaning of

---

[4] In response to First Acceptance's motion for a directed verdict, Appellant did state, "They got someone that can drive[–]you got a Kevin Morazan, there's a date of birth of 1993 as opposed to 2001, so they put 1993 on there. That person can drive." However, just before this, Appellant repeated the argument that "the exclusion does not apply to a [fourteen]-year-old" and the insurance company "got the wrong date." Therefore, this exchange did not sufficiently raise the "two Kevins theory" to the circuit court.

[5] Additionally, Appellant's argument that the birthdate on the named driver exclusion is a mutual mistake that must be reformed before the exclusion can be enforced was neither raised to nor ruled upon by the circuit court.

policy language to extend or defeat coverage that was never intended by the parties."
*Id.*

Appellant makes the same argument to this court she made at trial—that excluding a fourteen-year-old from an insurance policy violates South Carolina law and public policy. First, we hold the named driver exclusion in this case complies with every element of section 38-77-340 and, therefore, must be enforced as written. Second, we hold that excluding a fourteen-year-old from an insurance policy does not violate the purpose of the named driver exclusion statute or public policy.

Section 38-77-340 states:

> [T]he insurer and any named insured must, by the terms of a written amendatory endorsement, the form of which has been approved by the director or his designee, agree that coverage under such a policy of liability insurance shall not apply while the motor vehicle is being operated by a natural person designated by name. The agreement, when signed by the named insured, is binding upon every insured to whom the policy applies and any substitution or renewal of it. However, no natural person may be excluded unless the named insured declares in the agreement that (1) the driver's license of the excluded person has been turned in to the Department of Motor Vehicles or (2) an appropriate policy of liability insurance or other security as may be authorized by law has been properly executed in the name of the person to be excluded.

All requirements of this statute have been met in this case. When Carlos applied for his policy, he listed Kevin as an excluded driver on the policy application page. Because of this, Carlos's application included a named driver exclusion form—form SCC-307—that designated Kevin, a natural person, as an excluded driver. The parties stipulated at trial that this form was approved by the Department of Insurance. Carlos, the named insured, signed this form via Docusign, and neither party challenges the validity of the signature on appeal. As a result, Carlos's policy includes a Named Driver Exclusion Endorsement, which confirms that

> no coverage is afforded for any claim or **loss** arising from an **accident** when the **insured auto** . . . is being driven,

> operated, or under the control of, either with or without the express or implied permission of the **named insured** or **owner,** by those persons specifically listed by **you** on **your application**[.] . . . This endorsement applies to any continuation, renewal, replacement, or reinstatement of this policy unless changed by **you** in writing.

Carlos thus agreed that coverage under the First Acceptance policy would not apply while Kevin operated any of the covered vehicles, and Kevin was excluded from coverage on the initial policy and each renewed policy. This agreement was signed by Carlos and was thus binding upon every insured to whom the policy applied, which included Jayvon.

The remaining requirement of section 38-77-340, that the named insured declare in the agreement that "(1) the driver's license of the excluded person has been turned in to the Department of Motor Vehicles or (2) an appropriate policy of liability insurance or other security as may be authorized by law has been properly executed in the name of the person to be excluded" has been met here. Insurance companies have no obligation to verify these declarations; all that matters is that the insured make the required declaration.[6] *See United Fin. Cas. Co. v. Bostic*, 782 F. Supp. 2d 179, 181 (D.S.C. 2011) (holding that a named driver exclusion was valid and complied with the requirements of section 38-77-340 even though the representation that the excluded driver had other insurance was untrue because neither the agent nor the insurance carrier had any duty to investigate the representation).

Here, Carlos indicated on the named driver exclusion form that "[a]n appropriate policy of liability insurance (or other security) as may be authorized by law has been properly executed in the name of the person to be excluded." Carlos signed this form, which also states,

> I further declare that (1) the driver's license of the excluded person has been turned in to the Department of Motor Vehicles, or (2) an appropriate policy of liability insurance

---

[6] In 2005, the General Assembly removed from the statute a requirement that the insurance agent issuing the policy verify that the excluded driver's license had in fact been turned in or that an insurance policy did in fact exist in the excluded driver's name. *Compare* Act No. 459, 1996 S.C. Acts § 63, *with* Act No. 241, 2004 S.C. Acts § 8.

(or other security) as may be authorized by law has been properly executed in the name of the person to be excluded.

This declaration satisfied the statute's requirement even though Kevin did not actually have alternative insurance when the policy was issued. Thus, the named driver exclusion executed by Carlos complied with every requirement of section 38-77-340. For this reason, the exclusion is valid, and we must apply general contract principles and enforce the exclusion as written.

Next, we address Appellant's argument that it is impossible for a fourteen-year-old to be excluded under section 38-77-340 because they cannot obtain a driver's license or their own insurance policy. Initially, nothing in the statute's plain language prohibits its application to a fourteen-year-old: the statute states that "liability insurance shall not apply while the motor vehicle is being operated by a *natural person designated by name*" and does not specify that the natural person must be of driving age. § 38-77-340 (emphasis added). Further, the statute states "no natural person may be excluded unless" they have turned in their license or have their own insurance; it does not indicate that no person under a certain age may be excluded. *Id.*

Appellant argues a fourteen-year-old cannot surrender his driver's license because he cannot lawfully obtain one, but this argument sidesteps the purpose of this requirement: by declaring that an excluded driver's license has been turned in to the Department of Motor Vehicles, the named insured confirms that this excluded driver *cannot legally drive*. The same logic can be applied to fourteen-year-olds who cannot legally drive. Thus, this requirement is not impossible for fourteen-year-olds; rather, it is automatically satisfied. Additionally, Appellant argues fourteen-year-olds cannot secure alternative or appropriate insurance. This argument is unavailing because the driver's license requirement is automatically satisfied for fourteen-year-olds and therefore there is no need to meet the alternative requirement. Further, from a motor safety perspective, fourteen-year-olds may be covered under automobile insurance policies issued to household resident relatives. *See* S.C. Code Ann. § 38-77-30(7) (2015) (defining "insured" to include "the named insured and, while *resident of the same household*, the spouse of any named insured *and relatives of either*" (emphases added)). While this does not strictly comply with the statute's requirement that a policy of liability insurance be executed in the name of the person to be excluded, it does satisfy the *objective* that this person be covered under another policy.

Last, turning to public policy, the named driver exclusion statute reflects a decision by the General Assembly to protect parties' freedom of contract, even when weighed against mandatory minimum insurance requirements. *See Lincoln Gen. Ins. Co. v. Progressive N. Ins. Co.*, 406 S.C. 534, 547, 753 S.E.2d 437, 444 (Ct. App. 2013) (holding that the named driver exclusion statute was not inhibited by mandatory minimum policy limits because it constituted a separately approved public policy: while mandatory insurance protects the public, the named driver exclusion statute "protects, in limited situations, the right of the parties to make their own contract" (quoting *S.C. Ins. Co. v. Barlow*, 301 S.C. 502, 508, 395 S.E.2d 795, 798 (Ct. App. 1990))).[7] As stated by our supreme court, the dual purposes of the named driver exclusion statute are "providing the named insured the opportunity to pay lower premiums when a bad driver would otherwise be included within the policy and protecting the motoring public by requiring the excluded driver to either surrender his driver's license or be insured under his own policy . . . ." *Pickens*, 434 S.C. at 67, 862 S.E.2d at 445.

This reasoning applies just as much to young drivers as it does to bad drivers. On average, adding a teen driver to a car insurance policy increases rates by 152% (176% for young men and 129% for young women).[8] First Acceptance testified that to obtain automobile insurance, applicants must disclose all household residents over the age of fourteen. In this situation, with a policy that renews each year, the named insured will end up with a driving-aged teenager on the policy and a premium that skyrockets.[9] This illustrates the utility of the named driver exclusion statute: the named insured can avoid these higher premiums by excluding the teenager from their policy. The counterbalance remains the same, as the young driver can only be excluded if the named insured declares this young person either does not have a license or is covered by another insurance policy. So long as this trade-off is permitted for bad drivers, it should also be permitted for young drivers.

---

[7] Our supreme court has held the statute validly excludes underinsured motorist coverage, *Nationwide Insurance Company of America v. Knight*, 433 S.C. 371, 858 S.E.2d 633 (2021); and uninsured motorist coverage in certain circumstances, *United Services Automobile Association v. Pickens*, 434 S.C. 60, 862 S.E.2d 442 (2021).

[8] *Teen Drivers, Insurance and Safety*, S.C. Dep't of Ins., https://doi.sc.gov/962/Teen-Drivers-Insurance-and-Safety (last visited July 2, 2025).

[9] First Acceptance explained at oral argument that these premiums kick-in regardless of whether the teenager actually obtains their license.

Here, Carlos had to inform the insurance company about fourteen-year-old Kevin. Schlechta's testimony at trial suggested that First Acceptance's typical practice is to "disclose then exclude" these young people, which is what Carlos chose to do. And by continuing to exclude Kevin from the policy when he became driving-aged, Carlos benefitted by avoiding teenage driver premiums. He was able to do so because he declared Kevin was covered by other insurance, and as discussed above, the exclusion was valid even though Kevin did not actually have alternative insurance. In making this decision, Carlos accepted the financial risk of being personally responsible for anything that happened if Kevin ended up behind the wheel. The named driver exclusion statute implies this result.

In sum, we find excluding a fourteen-year-old from an automobile insurance policy does not violate public policy, and the exclusion can be enforced so long as it complies with the requirements of section 38-77-340.

## CONCLUSION

Accordingly, the decision of the circuit court is

**AFFIRMED.**

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**