Hillsborough-northern judicial district
No. 2010-756

ESTATE OF JUNE M. DAY & a.

v.

HANOVER INSURANCE COMPANY

Argued: June 16, 2011
Opinion Issued: September 20, 2011

*Richard J. Joyal*, of Manchester, by brief and orally, for the petitioners.

*Boyle, Shaughnessy & Campo, P.C.*, of Manchester (*Mark W. Shaughnessy* and *Andrew B. Ranks* on the brief, and *Mr. Ranks* orally), for the respondent.

LYNN, J. The petitioners, the Estate of June M. Day (Estate), Byron S. Day and Stephanie L. Day, appeal the Superior Court's (*Tucker*, J.) ruling that respondent Hanover Insurance Company's (Hanover) consent to settle a claim by the petitioners with the insurer of a third party tortfeasor did not preclude Hanover from contesting its liability to provide the Estate underinsured motorist coverage under its insurance contract with the Estate's decedent. We affirm.

The summary judgment record reveals the following pertinent facts. On September 18, 2007, June M. Day was fatally injured in a motor vehicle accident. The collision occurred on Route I-93 in Hooksett, when a vehicle operated by Lisa Follett that was traveling north crossed the median and struck Day's vehicle that was traveling south.

At the time of the accident, Day's vehicle was insured under an automobile liability policy and a personal umbrella policy issued by Hanover, and both policies provided underinsured motorist coverage. Specifically, Hanover was obligated to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of . . . [a]n . . . 'underinsured motor vehicle' because of 'bodily injury' sustained by an 'insured' and caused by an accident." Follett's vehicle was insured by the Commerce Insurance Company (Commerce) under a policy that provided a bodily injury coverage limit of $100,000.

Following the accident, the petitioners made a claim against the Commerce policy, and in November 2008 Commerce offered its policy limit. By letter dated February 17, 2009, Hanover agreed that the petitioners could accept the settlement offered by Commerce "while reserving [Hanover's] right to continue the investigation into liability in this matter," and noting that Hanover had "neither accepted nor denied liability." The petitioners accepted payment from Commerce and executed a release of Follett and Commerce from any further liability arising out of the accident.

Thereafter, the petitioners took the position that, by consenting to the settlement with Follett and Commerce, Hanover was precluded from contesting that the petitioners were "legally entitled to recover" damages from Follett, and, when Hanover disagreed with the petitioners' position, the petitioners instituted this declaratory judgment action in superior court. Ruling on the parties' cross-motions for summary judgment, the trial court rejected the petitioners' position and concluded that Hanover's agreement to the settlement did not preclude it from contesting its liability to provide underinsured motorist coverage. The court therefore dismissed the action.

The petitioners filed an objection to the dismissal and a motion for clarification and reconsideration. In the motion, the petitioners argued that the court had "misunderstood the essence of the petition," and that they did not assert "that Hanover's consent to settlement gives the Petitioners a legal entitlement to uninsured motorist coverage." Rather, the petitioners urged that the question it had asked the court to rule upon was whether Hanover participated in good faith in the settlement process. The trial court denied the petitioners' objection and motion, ruling that it had not misunderstood the issue presented and that, even if the issue was as the petitioners reformulated it, that issue was not the proper subject for a declaratory judgment action. This appeal followed.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *N. Sec. Ins. Co. v. Connors*, 161 N.H. 645, 649 (2011); *see* RSA 491:8-a (2010). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. *N. Sec. Ins. Co.*, 161 N.H. at 649. We review the trial court's application of the law to the facts *de novo. Id.*

The petitioners argue that the trial court erred as a matter of law in ruling that Hanover's consent to the settlement with Commerce does not preclude Hanover from disputing its liability to provide the petitioners with underinsured motorist coverage. The only authority they cite for this position is the following statement contained in an insurance law treatise:

> [W]hen the insurer providing uninsured (or underinsured) motorist insurance coverage consented to or approved a settlement by an insured with a tortfeasor or anyone else who may be legally obligated, such a settlement does not provide an insurer with a basis for denying a claim for uninsured motorist insurance benefits on the ground that an insured is not legally entitled to recover for damages caused by an uninsured motorist.

1 A.L. WIDISS & J.E. THOMAS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 7.2, at 368-69 (3d ed. rev. 2005).

 However, contrary to the petitioners' argument, the above passage provides no support for the view that Hanover's consent to the settlement with Follett and Commerce precludes Hanover from contesting its liability to provide the petitioners with underinsured motorist coverage. Rather, the passage merely indicates that an underinsured motorist carrier, such as Hanover, cannot utilize its consent to a settlement with a third party tortfeasor or the tortfeasor's insurance carrier as a ground for denying underinsured motorist coverage to its insured *on the basis that the insured is not legally entitled to recover damages caused by the underinsured motorist.* Indeed, the quoted language is found in a section of the treatise entitled "Fault," which begins with the statement: "The right of an insured to recover under the uninsured motorist coverage is contingent on the insured being legally entitled to recovery because the injuries were caused by the negligent operation of an uninsured highway motor vehicle." *Id.* at 363. The record here contains no indication that Hanover has attempted to deny coverage on the basis of the petitioners' settlement with Follett and Commerce.

The Hanover policy contains the following pertinent provisions:

**PART C. Uninsured Motorists Coverage**
**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of:

 1. An "uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury" sustained by an "insured" and caused by an accident; . . . .

. . . With respect to damages an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle," we will pay under this coverage only if 1. or 2. below applies:

 1. The limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements; or

 2. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

 a. Have been given prompt written notice of such tentative settlement; and

b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

. . . .

## ARBITRATION

A. If we and an "insured" do not agree:

 1. Whether that "insured" is legally entitled to recover damages; or

 2. As to the amount of damages which are recoverable by that "insured";

From the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle", then the matter may be arbitrated. Either party may make a demand for arbitration.

. . . .

## ADDITIONAL DUTY

With respect to damages an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle", a person seeking coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

. . . .

## PART F — GENERAL PROVISIONS
## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right . . .

. . . .

> Our rights do not apply under Paragraph A with respect to damages an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" if we:
>
> 1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and
>
> 2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

■ Under the above policy terms, which are clear and unambiguous, *see Matarese v. N.H. Mun. Assoc. Prop. - Liab. Ins. Trust*, 147 N.H. 396, 403 (2002), Hanover's consent to the settlement had the effect of waiving Hanover's right to pursue a subrogation claim against Follett or Commerce. But there is nothing in these terms indicating that such consent bars Hanover from contesting whether its insured is "legally entitled to recover" from Follett.

■ In *Funai v. Metropolitan Property & Casualty Co.*, 145 N.H. 642 (2000), we addressed the closely related question of whether an uninsured motorist carrier's consent to settlement with the tortfeasor's insurer required the uninsured motorist carrier to arbitrate the plaintiffs' claims rather than insisting on a trial in court.[*] The policy at issue provided for arbitration of disputes between the uninsured motorist carrier and its insured upon the written consent of both parties. *See Funai*, 145 N.H. at 645. In rejecting the plaintiffs' argument, we held:

> There is no correlation between consent to settle and consent to arbitrate.
>
> Acceptance of the plaintiffs' argument that consent to settle is tantamount to consent to arbitrate would require us to find by implication a waiver by Metropolitan of its right to submit the dispute to trial. It is axiomatic that whenever a case involves contested issues of material fact, the parties are entitled to a final hearing or a trial at which they may produce evidence and submit written arguments on the law. Furthermore, if the plaintiffs'

---

[*] *Funai* is not directly on point because in that case, unlike this one, it does not appear the plaintiffs were asserting that Metropolitan was precluded from contesting its liability to provide coverage in the arbitration proceeding plaintiffs demanded.

alleged additional damages exceed $1,500.00, such a holding would imply waiver by Metropolitan of its constitutional right to trial by jury.

> We will not find waiver of such a right without a clear expression by a party to do so. Because we find that Metropolitan had no reason to anticipate implications regarding its right to litigate its dispute with the plaintiffs when it consented to allow the plaintiffs to settle with the underinsured motorist, we will not find Metropolitan waived its right to trial.

*Id.* at 645-46 (brackets, quotations, and citations omitted).

· ██ Similarly, in this case we find "no correlation" between Hanover's consent to the settlement with Follett and Commerce and a consent to its liability to provide underinsured motorist coverage. Our conclusion is consistent with that reached by the Massachusetts Appeals Court in *Furukawa v. Arbella Mutual Insurance Co.*, 794 N.E.2d 1225 (Mass. App. Ct. 2003). In rejecting the very argument asserted by the petitioners here, the court in *Furukawa* explained:

> There would be no sound reason to require the insurer that provides underinsured coverage to withhold its consent to a settlement with the alleged tortfeasor as a condition of being able later to contest the tortfeasor's liability in relation to its coverage of excess damages. There are many reasons why the alleged tortfeasor's liability insurer might choose not to contest liability, particularly where the coverage limit is small in relation to the likely cost of a successful defense. Why should the victim's own insurer of uncovered damages be forced to oppose a settlement beneficial to its own policyholder to preserve its right to contest its own liability, with, as here, far larger exposure limits?

*Furukawa*, 794 N.E.2d at 1228. We are in full agreement with this reasoning. To hold, as the petitioners urge, that the underinsured carrier's consent to settlement with the tortfeasor precludes that carrier from contesting the tortfeasor's liability would be to foster an unsound public policy that would discourage first party insurers such as Hanover from agreeing to settlements that inure to the benefit of their policyholders. We refuse to countenance such a result.

The petitioners also return to the theme they presented in their motion to clarify and reconsider the trial court's order, *i.e.*, that the essence of their complaint was not that Hanover was precluded from contesting its liability, but that Hanover did not participate in good faith in the settlement process

because it delayed in either acknowledging or disputing its liability to provide underinsured motorist coverage. The petitioners suggest that because this issue remained alive even after the trial court ruled in Hanover's favor on the summary judgment motions, the court erred in dismissing the action. The short answer to this argument is that, in ruling on the petitioners' motion for clarification or reconsideration, the trial court specifically found that the parties had agreed the only issue to be decided in this case was whether Hanover's consent to the settlement had the legal effect of precluding Hanover from contesting its liability to provide underinsured motorist coverage.

■■ In support of this ruling, the trial court relied upon: (1) the petitioners' objection to Hanover's cross-motion for summary judgment, in which the petitioners represented that " '[t]he singular issue of law before the Court' is 'whether Hanover, after having consented to settlement by its insured with the underlying tortfeasor, can ultimately deny a claim for uninsured motorist coverage benefits on the ground that its insured is not legally entitled to recover damages caused by the tortfeasor' "; (2) the petitioners' motion to remove the case from the jury trial list, wherein they stated that there were no factual issues in dispute but only the single issue of law just recited; and (3) the petitioners' failure to dispute the order issued by the court following the summary judgment hearing in which the court again described the aforesaid legal issue as the only matter to be decided in the case. The petitioners have not provided us with their pleadings related to items (1) and (2), and do not challenge the court's ruling on item (3). *See Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004) (appealing party has the burden of presenting this court with a record sufficient to decide its issues on appeal). Accordingly, we must assume that the record supports the trial court's ruling regarding the litigation strategy the petitioners pursued below. *See id.*; *Atwood v. Owens*, 142 N.H. 396, 399 (1997). In any event, insofar as the petitioners complain that Hanover failed to exercise good faith in that it delayed investigating and processing their claim, we note that the petitioners at all times had it within their power under the terms of the policy to address this problem by demanding arbitration of its underinsured motorist claim against Hanover, or, alternatively, by filing a breach of contract action in court.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, CONBOY and HICKS, JJ., concurred.